In re Virginia E. PAGE, Debtor.

In re PAGE ASSOCIATES, Debtor.

Virginia E. PAGE, et al., Plaintiffs,

v.

FIRST NATIONAL BANK OF MARYLAND, et al., Defendants.

WESTINGHOUSE CREDIT CORPORATION,
Appellant,

v.

Virginia E. PAGE, et al., Appellees.

Bankruptcy Nos. 81–00673, 81–00674.
Adv. No. 81–0232.
Civ. A. No. 81–3172.

United States District Court,
District of Columbia.

March 30, 1982.

Lawrence H. Fischer, Washington, D. C., for debtors/appellees.

Peter Barnes, Helen I. Bendix, Washington, D. C., for appellant Westinghouse Credit Corp.

## MEMORANDUM

GESELL, District Judge.

This is an appeal from a preliminary injunction entered by the United States Bankruptcy Court for the District of Columbia enjoining First National Bank of Maryland ("Bank") and Westinghouse Credit Corporation ("WCC"), the issuer and beneficiary, respectively, of a $500,000 letter of credit, from "honoring, paying or funding, and receiving money" pursuant to the letter of credit. For the reasons stated below the Court reverses the Bankruptcy Court and remands this action for further proceedings consistent with this opinion.

On December 4, 1981, Page Associates, a District of Columbia limited partnership, and Virginia Page, its sole general partner, filed voluntary petitions in the Bankruptcy Court seeking relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (Supp. III 1979). WCC is a substantial creditor of the debtors secured by a second deed of trust on the Chastelton Hotel, real property in the District of Columbia, which is the primary asset of Page Associates. In addition, WCC holds a $500,000 letter of credit, running in its favor, issued by the First National Bank of Maryland. As a condition of issuing the letter of credit the Bank required its customers, Mrs. Page and Page Associates, to agree to indemnify the bank in the event that WCC cashed the letter of credit. As security for their indemnification obligations, Associates pledged a $100,000 certificate of deposit with the Bank and Mrs. Page placed a second deed of trust in the Bank's favor on a condominium in the District of Columbia which is Mrs. Page's personal residence. The real estate mortgage was recorded in accordance with local statute.

On December 8, 1981, four days after the Chapter 11 petition was filed, WCC presented the letter of credit to the Bank for payment. The following day the debtors filed in the Bankruptcy Court a verified complaint and a motion for temporary restraining order and preliminary injunction seeking to enjoin funding of the letter of

credit. The Bank consented to the issuance of an injunction.[1] WCC claimed that it was entitled to payment despite the Chapter 11 petition and opposed the injunctive relief sought. The Bankruptcy Court issued a temporary restraining order which restrained WCC from demanding and the Bank from funding the letter of credit. On December 16, the Bankruptcy Court held a hearing on the debtors' motion for preliminary injunction. On that day the Bankruptcy Court entered a preliminary injunction precluding WCC from cashing the letter of credit until further order.[2]

WCC sought leave from this Court to appeal from the preliminary injunction, which was granted on January 6, 1982, it appearing to the Court that the debtors' entitlement to injunctive relief raised a controlling question of law as to which there was substantial ground for difference of opinion. The issues have been fully argued and briefed prior as well as subsequent to oral argument on this appeal.

The Bankruptcy Court held that it was appropriate to enjoin payment of the letter of credit on the ground that it "would be a transfer in violation of Section 549 of the Bankruptcy Code, a transfer of assets in violation of Section 362 of the Bankruptcy Code, and would severely jeopardize the filing of a successful Plan of Reorganization under Chapter 11 . . . ." We reverse each of these specific holdings.[3]

In its oral opinion the Bankruptcy Court expressed the view that cashing the letter of credit might violate either subsection (3) or (4) of 11 U.S.C. § 362(a). These provide:

[A] petition [under Title 11] operates as a stay, applicable to all entitites, of—

. . . . .

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect or enforce any lien against property of the estate.

The Court concludes that cashing the letter of credit under the circumstances of this case is not the type of "act" contemplated by these provisions and therefore WCC was not automatically stayed from cashing the letter of credit.

With respect to 11 U.S.C. § 362a(3), cashing the letter of credit will not divest the estate of property since neither the letter of credit nor its proceeds are property of the estate under the Bankruptcy Code. Section 541 of 11 U.S.C. defines property of the estate as "all legal or equitable interests of the debtor" (subject to various limitations not relevant in this case). In issuing the letter of credit the Bank entered into an independent contractual obligation to pay WCC out of its own assets. Although cashing the letter will immediately give rise to a claim by the Bank against the debtors pursuant to the latter's indemnification obligations, that claim will not divest the debtors of any property since any attempt to enforce that claim would be subject to an

---

1. The Bank did not otherwise participate in the proceedings before the Bankruptcy Court or in this appeal. It is undisputed that WCC properly presented the letter of credit and was entitled to immediate payment but for the injunction entered by the Bankruptcy Court.

2. With the consent of the Bank the Court also tolled the expiration of the letter of credit *pendente lite.*

3. The issues raised by this appeal have apparently not been examined under the new Bankruptcy Code. *But cf. In re Hart Ski Mfg. Co.,* 7 B.R. 465 (Bkrtcy.Minn.1980) (declaring secured guarantor of bank which had funded a letter of credit liable despite customer's voluntary Chapter 11 petition). Under the old Bankruptcy Act the majority of courts have held that a

third-party guarantor is required to reimburse a creditor even if this would give rise to a claim against a debtor in bankruptcy proceedings. *Compare Atlantic Richfield Co. v. Good Hope Refineries, Inc.,* 604 F.2d 865, 870 (5th Cir. 1979); *In re Marine Distributors, Inc.,* 522 F.2d 791, 795 (9th Cir. 1975); *In re Magnus Harmonica Corp.,* 233 F.2d 803, 804 (3d Cir. 1956) *with In re Twist Cap, Inc.,* 1 B.R. 284, 285 (Bkrtcy.Fla.1979). In *In re Twist Cap* the Bankruptcy Court rested its ruling on the fact that the issuer of letters of credit held a security interest in property of the bankrupt. For the reasons expressed in the text we find that this fact should not bar payment of the letter of credit in this case.

automatic stay pursuant to 11 U.S.C. § 362a(4).[4]

Nor would cashing the letter of credit "create, perfect or enforce" a lien in the property securing the debtors' obligation to indemnify the Bank. The Bank's liens [5] on property of the debtors to secure the letter of credit arrangement was created prior to the initiation of Chapter 11 proceedings and remain valid in bankruptcy whether or not the letter of credit is cashed. It is well established that security arrangements for future advances are valid. *See generally* G. Osborne, Mortgages, at 178–201 (2d Ed. 1970); G. Gilmore, Security Interests in Personal Property, at 916–46 (1965). In addition, a lien to secure the obligation to repay a future advance has priority over liens of other creditors which attach after the security agreement is entered into but before the creditor pursuant to the future advance agreement has actually advanced any funds, at least where the creditor is contractually committed to do so. *See Frank M. Ewing Co. v. Krafft Co.*, 222 Md. 21, 158 A.2d 654 (1960); G. Osborne, *supra* at 194. Since a trustee in a Chapter 11 proceeding is a hypothetical lien creditor; *see* 11 U.S.C. § 544(a), a prior lien created as part of a future advance arrangement is valid against the trustee in a Chapter 11 proceeding.

It is uncontested that the Bank's liens were perfected prior to the Chapter 11 filing. Appellees acknowledge that the "security interest in favor of First National Bank was perfected when the Letter of Credit was initially provided." [6] Supplemental Brief of Appellees in Response to Reply Brief of Appellant, at 3 (filed February 16, 1982). Since the liens have already been perfected and the Bank is under a contractual obligation to fund the letter of credit, the Bank has perfected liens valid in a Chapter 11 proceeding. Since perfected liens already exist cashing of the letter of credit cannot have the effect of either creating or perfecting a lien.

Cashing of the letter of credit is not an act to "enforce" a lien. The Bank will, of course, have a claim against the debtors under the indemnification agreement once the letter of credit is funded. But the filing of the Chapter 11 petition automatically stays any attempt to enforce that claim. Funding of the letter is therefore not an act to "enforce" a lien.

The Bankruptcy Court also relied on 11 U.S.C. § 549 to support the grant of preliminary injunctive relief. That section bars a postpetition "transfer of property" under various circumstances. Essentially for the reasons given above that cashing the letter of credit would not constitute an act to obtain possession of debtors' property, neither would cashing the letter of credit lead to a transfer of property. The letter of credit and its proceeds represent property of the Bank, not the debtors. Although funding of the letter of credit would give rise to a claim by the Bank against the debtors, it would not lead to a transfer of the debtors' property since, as discussed, enforcement of the Bank's claim is barred by section 362.

**4.** Although the Bank will be in a position to seek relief from the automatic stay provisions under 11 U.S.C. § 362(d), the Bank will not be able to take possession of any of the debtors' property until the Court specifically grants such relief or pursuant to a continued plan of reorganization.

**5.** The Bank is secured by a deed of trust and a certificate of deposit pledged with the Bank. These types of financial devices have different attributes under bankruptcy law, *see* 4 Collier on Bankruptcy ¶ 541.08[9] at 541–53 (15th ed. 1981), as well as under general commercial law, *see generally* G. Gilmore, Security Interests in Personal Property § 1.1 *et seq.* (1965). However, the Bankruptcy Code draws no distinction between these two types of financing devices that is relevant to this appeal and it would appear that both are covered by the Code's broad definition of "security interest." *See* 11 U.S.C. § 101(28) and 101(37).

**6.** Appellees draw a distinction between a lien and a security interest, arguing that although the Bank had a perfected security interest in debtors' property prior to the filing of the Chapter 11 petition a lien would be created if the letter of credit were funded. Under Bankruptcy Code terminology, however, a security interest is merely a type of lien. *See* 11 U.S.C. § 101(28) & (37); 2 Collier on Bankruptcy, ¶ 101.37 at 101–73 (15th ed. 1981) ("a security interest is a lien").

The final basis cited by the Bankruptcy Court for entry of a preliminary injunction was that funding the letter of credit would affect the filing of a plan of reorganization under Chapter 11. Although the Court does not doubt the broad power of the Bankruptcy Court "to do whatever is necessary to aid its jurisdiction," 2 Collier on Bankruptcy ¶ 105.02 at 105–04, there has been no showing that under the circumstances of this case an injunction would aid the preparation of a successful plan. As discussed, the Bank, like all secured creditors, will be barred from attempting to enforce its claim even if the letter of credit is cashed. Thus the debtors will be provided adequate breathing space to attempt to work out their financial affairs as intended by the Bankruptcy Code. Furthermore, to whatever extent the Bank's liens on the debtors' property constrain their use of that property in continuing the business of the partnership or in rearranging their affairs, see 11 U.S.C. § 362, this constraint will be the same so long as the letter of credit remains outstanding whether or not it is cashed. Finally, if a successful plan of reorganization requires that certain claims be compromised, this can be achieved by modifying the claims of the Bank as well as those of other creditors. As between compromising either the Bank's claim or WCC's claim to the $500,000 in dispute it is necessary in the circumstances of this case to permit the Bank to carry through on its contractual obligations and to require the Bank, not WCC, to suffer the possible adverse consequences of a penurious debtor.

Moreover, enjoining the payment of the letter of credit, even temporarily, would frustrate the commercial purposes of letters of credit to the detriment of financial institutions as well as their customers.

The essence of a letter of credit is the promise by a bank, or other issuer, to pay money. The key to the uniqueness of a letter of credit and to its commercial vitality is that the promise by the issuer is independent of any underlying contracts. *Pringle-Associated Mortgage Corp. v. Southern Natl. Bank*, 571 F.2d 871, 874 (5th Cir. 1978).

From the point of view of the beneficiary of a letter of credit a primary consideration is that it will ensure him payment by

substituting the known and secure credit of the issuer, such as a bank, for the unknown and perhaps risky credit of the other party to the underlying transaction .... *Insurance Co. of North America v. Heritage Bank*, 595 F.2d 171, 173 (3d Cir. 1979).[7]

If payment on a letter of credit could be routinely delayed by the filing of a Chapter 11 petition the intended substitution of a bank for its less credit-worthy customer would be defeated. As a consequence the letter of credit would become a dubious device for securing credit. Where, as here, the goals of the Bankruptcy Code can be achieved without producing this unfortunate result there is obviously no reason not to allow the letter of credit to be cashed according to its terms.

The Bankruptcy Court erred in entering a preliminary injunction insofar as it prohibited WCC from exercising its rights under the letter of credit. Such action would not violate Section 362 or Section 549 of the Bankruptcy Code nor was the injunction necessary to aid the jurisdiction of the Bankruptcy Court. Accordingly, the preliminary injunction is set aside and the case remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

7. *See also AMF Head Sports Wear, Inc. v. Ray Scott's All-American Sports Club, Inc.,* 448 F.Supp. 222, 225 (D.Ariz.1978).