**In re BRIGGS TRANSPORTATION CO., Debtor.**

**BRIGGS TRANSPORTATION CO., Plaintiff,**

v.

**NORWEST BANK MINNEAPOLIS, N.A. and Transport Insurance Company, Defendants.**

**Bankruptcy No. 4–83–0414. Adv. No. 4–83–2083.**

United States Bankruptcy Court, D. Minnesota.

Jan. 18, 1984.

James A. Rubenstein, O'Connor & Hannan, Minneapolis, Minn., for plaintiff.

Hendrik DeJong and David M. Beadie, Faegre & Benson, Minneapolis, Minn., for defendant, Norwest.

Melvin I. Orenstein, Lindquist & Vennum, Minneapolis, Minn., for defendant, Transport Insurance.

## ORDER FOR SUMMARY JUDGMENT AND JUDGMENT

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for hearing on the motion of Norwest Bank Minneapolis, N.A. ("Norwest Minneapolis") for summary judgment against the plaintiff on its amended complaint. Hendrik De Jong appeared on behalf of Norwest Minneapolis; James A. Rubenstein and Steven I. Winer appeared on behalf of the plaintiff, Briggs Transportation Company ("Briggs") and Jerrold F. Bergfalk appeared on behalf of the defendant, Transport Insurance Company.

Based on all the files and records herein and the argument and memoranda of counsel, I make the following:

### FINDINGS OF FACT

1. In the fall of 1980, Briggs requested Norwest Minneapolis to issue a letter of credit in the amount of $325,000 for Briggs' account to Transport Insurance Company ("Transport Insurance").

2. In its written application for this letter of credit, Briggs agreed to reimburse Norwest Minneapolis on demand for all payments made by Norwest Minneapolis under the letter of credit; agreed to pay all expenses, including reasonable attorneys' fees and legal expenses, incurred by Norwest Minneapolis related to the letter of credit; and agreed to pay interest on these obligations.

3. Briggs also agreed to grant liens upon its freight terminals at Burlington, Iowa and Muscatine, Iowa and upon various trucks, tractors and trailers owned by it, to secure its obligations under the application for the letter of credit.

4. In reliance on these agreements by Briggs, Norwest Minneapolis issued the letter of credit to Transport Insurance dated October 10, 1980. The letter of credit was subsequently renewed and amended from time to time at Briggs' request.

5. On or about October 30, 1980, Briggs executed and delivered to Norwest Minneapolis mortgage deeds creating liens on its terminals at Burlington and Muscatine, Iowa. These mortgages by their terms secured Briggs' obligations to Norwest Minneapolis under the application for the letter of credit. They were duly recorded on November 3 and 4, 1980, respectively.

6. Before these transactions took place, Briggs had become indebted to Norwest Bank University-Midway, N.A., formerly known as Second Northwestern National Bank of Minneapolis ("Norwest University-Midwest"), and to various other banks, including Norwest Minneapolis, for loans made to Briggs. At the time the letter of credit was issued, these loans were outstanding under a Financing Agreement dated as of May 1, 1980, which provided that the loans to Briggs were to be held by and in the name of Norwest University-Midway, with the other banks, including Norwest Minneapolis, holding participations in these loans and the security therefor.

7. By a Security Agreement dated May 1, 1980, Briggs granted Norwest University-Midway a security interest in more than 2,000 trucks, tractors and trailers, as security for Briggs' obligations under the Financing Agreement. These trucks, tractors and trailers were covered by motor vehicle certificates of title, and by September 30, 1980, certificates of title naming Norwest University-Midway as lienholder had been issued as to all but 58 of these vehicles. Pursuant to a Stipulation approved by this Court by order dated August 25, 1983 and filed in Adversary Proceeding No. 83–0239, Briggs has admitted that Norwest University-Midway is named as first lienholder on the certificate of title for 1,225 vehicles to be sold by Briggs. Briggs admits that notation of the lienholder's name on the certificate of title is the proper method of perfection of liens on all these vehicles.

8. After Norwest Minneapolis issued the letter of credit, Briggs signed an amendment, dated as of November 5, 1980, to the May 1, 1980 Security Agreement. Under this amendment, Briggs agreed that any indebtedness it might owe to Norwest Minneapolis under the application for the letter of credit would be considered an obligation secured by the May 1, 1980 Security Agreement, and Briggs granted a security interest to Norwest University-Midway, as agent for Norwest Minneapolis, in all the vehicles covered by that Security Agreement, as security for this indebtedness. Thereafter, Norwest University-Midway acted for its own account and as agent for Norwest Minneapolis in holding, perfecting and administering the security interest in these vehicles. Thus, the security interest securing Briggs' obligations under the application for the letter of credit was perfected by the notation of Norwest University-Midway's name as lienholder on the pertinent certificates of title.

9. After Briggs commenced this Chapter 11 case, Transport Insurance made demand upon Norwest Minneapolis for payment of

$325,000 under the letter of credit. The draft and accompanying documents conformed to the call of the letter of credit as renewed and extended.

10. When the draft under the letter of credit was presented, Briggs requested this court to enjoin honor of the letter of credit. This relief was denied by the Court, and the draft under the letter of credit was honored and paid by Norwest Minneapolis on February 10, 1983.

11. Briggs' obligation to Norwest Minneapolis is secured by perfected liens upon the Burlington and Muscatine terminals and all trucks, tractors and trailers which are (i) covered by the May 1, 1980 Security Agreement, and (ii) covered by certificates of title on which Norwest University-Midway's name was noted as lienholder.

## CONCLUSIONS OF LAW

### I.

■ By issuing the letter of credit, Norwest Minneapolis entered into a binding and legally enforceable commitment to extend credit to Briggs should Transport ever make a draw under the letter of credit. Under Minn.Stat. § 336.5–103(1)(a) and § 336.5–106(1), a letter of credit is established when the beneficiary receives it. At that point, since the letter of credit was irrevocable, Norwest Minneapolis was "no longer free to take unilateral action with respect to the cancellation of the credit or modification of its terms." Official Comment 1 to U.C.C. § 5–106.

■ By execution of the application for the letter of credit, Briggs agreed to reimburse Norwest Minneapolis should Norwest Minneapolis be required to pay under the letter of credit. In addition, under Minn. Stat. § 336.5–114(3), unless otherwise agreed, an issuer (Norwest Minneapolis) is entitled to immediate reimbursement from the customer (Briggs) upon duly honoring a draft drawn under the letter of credit.

■ Thus, from the moment the letter of credit was issued, Norwest Minneapolis had a present claim against Briggs for reimbursement, contingent upon Norwest Minneapolis actually paying a conforming draft. Accordingly, the claim arose long before Briggs filed its Chapter 11 petition. Under the Bankruptcy Code a right to payment is considered a "claim", "whether or not such right is ... contingent." 11 U.S.C. § 101(4)(A). There is no dispute that Norwest Minneapolis was legally obligated to, and did, pay the letter of credit. Thus, the contingency occurred and the claim is now fixed. *See Westinghouse Credit Corp. v. Page (In re Page),* 18 B.R. 713, 716 (D.C.D.C.1982).

### II.

Liens in favor of Norwest Minneapolis against Briggs' real estate in Iowa were perfected in 1980 by the recording of the mortgages. There is no dispute that the mortgages were properly filed and that they were given by Briggs to secure the obligations of Briggs under the application for the letter of credit. The situation is analogous to the giving of a mortgage to secure advances to be made at some time in the future, pursuant to a binding commitment. "It is well established that security arrangements for future advances are valid." *Westinghouse Credit Corp. v. Page (In re Page),* 18 B.R. 713, 716 (D.C.D.C.1982). Thus Norwest Minneapolis, from the time of the recording of the mortgages, held perfected liens on the Iowa real estate to secure Briggs' obligations under the application for the letter of credit.

### III.

■ Prior to issuance of the letter of credit, a security interest in certain trucks, tractors and trailers had been granted by Briggs to Norwest University-Midway and was properly perfected by notation of Norwest University-Midway's name as lienholder on the certificates of title covering those vehicles. When Norwest Minneapolis issued the letter of credit, Briggs granted Norwest Minneapolis a security interest in these vehicles by granting a security interest to Norwest University-Midway, as agent for Norwest Minneapolis. Norwest Univer-

sity-Midway was to act, and did act, as agent for Norwest Minneapolis for the purpose of holding, perfecting and administering the security interest of Norwest Minneapolis.

There is no genuine issue about this fact. Briggs signed an amendment to the Norwest University-Midway security agreement in which it agreed to this arrangement. The only possible question is whether a security interest in favor of one party may be held and perfected by an agent acting for someone else (in this case, by Norwest University-Midway acting for Norwest Minneapolis).

Minn.Stat. § 336.9–105(1)(m) defines a secured party as follows (emphasis added):

> "Secured Party" means a lender, seller or other person in whose favor there is a security interest. . . . When the holders of obligations issued under an indenture of trust, equipment trust agreement *or the like* are represented by a trustee *or other person,* the representative is the secured party.

According to Grant Gilmore, the last sentence of § 9–105(1)(m)

> seems to have been put in by excess of caution. It does no harm but, even without it, no one could have doubted that an indenture trustee was entitled to sign, file and so on for the bond holders. . . . There appears to be no good reason (except to make things clear to members of the corporate bar) why the sentence is restricted to transactions which involve "an indenture of trust, equipment trust agreement or the like"; presumably any sort of trustee, fiduciary or representative could qualify as a "secured party," for formal purposes, for those whom he represents. G. Gilmore, *Security Interests in Personal Property,* § 10.3 aat 305 (1965).

It is clear, then, that Norwest Minneapolis properly perfected its security interest in the vehicles through Norwest University-Midway and that the obligations of Briggs under the application for the letter of credit are secured by these perfected liens on the vehicles.

## IV.

The liens in favor of Norwest Minneapolis covering the Iowa real estate, and the trucks, tractors and trailers, cannot be avoided in this bankruptcy case. The transfer of Briggs's property took place at the time the letter of credit was issued and the liens were granted, not at the time Norwest Minneapolis paid the draft. The act of paving the draft merely converted Norwest Minneapolis's claim from a contingent claim to one that is fixed and not subject to a contingency.

Courts and commentators have generally agreed that liens securing obligations under letter of credit arrangements are created at the time the letter of credit is issued:

> The Bank's liens on property of the debtors to secure the letter of credit arrangement was [sic] created prior to the initiation of Chapter 11 proceedings and remain valid in bankruptcy whether or not the letter of credit is cashed . . . . . In addition, a lien to secure the obligation to repay a future advance has priority over liens of other creditors which attach after the security agreement is entered into but before the creditor pursuant to the future advance agreement has actually advanced any funds, at least where the creditor is contractually committed to do so. . . . Since a trustee in a Chapter 11 proceeding is a hypothetical lien creditor, . . . a prior lien created as part of a future advance arrangement is valid against the trustee in a Chapter 11 proceeding.

*Westinghouse Credit Corp. v. Page (In re Page),* 18 B.R. 713, 716 (D.C.D.C.1982).

There is, therefore, simply no basis on which to hold that Briggs may avoid Norwest Minneapolis's liens. *See also:* D. Baird, Standby Letters of Credit in Bankruptcy, 49 *U.Chi.L.Rev.* 130 (1982), H. Chaitman and J. Sovern, Enjoining Payment on a Letter of Credit in Bankruptcy: A Tempest in a Twist Cap, 38 *Bus. Lawyer* 21 (1982).

## V.

As part of its motion for summary judgment, Norwest Minneapolis requests

**81**

me to allow its claim in a certain amount. I think it is inappropriate to take up the allowance of Norwest Minneapolis's claim as part of this adversary proceeding. The amended complaint deals with the avoidance of the lien of Norwest Minneapolis and not with the amount of its claim. Therefore, it does not seem to me that the amount of the claim is part of this adversary proceeding, nor should it be considered as part of the motion which is pending. Also, I am not at all clear and the record does not seem to disclose whether a claim has been filed by Norwest Bank Minneapolis. If it has been filed, there does not appear to be any objection to the allowance of the claim pending which means that the claim is allowed as a matter of law. 11 U.S.C. § 502(a). Thus, I am explicitly not deciding the amount of Norwest Minneapolis's claim nor the debtor's contention that § 502(e) limits the amount of Norwest Minneapolis's claim to whatever amount is ultimately determined to be owed to Transport Insurance.

VI.

The original complaint in this matter sought an injunction to prohibit Norwest Minneapolis from paying Transport Insurance Company under the letter of credit. For that requested relief, Transport Insurance Company was named as a defendant. The amended complaint, however, deals strictly with the avoidance of the liens granted to Norwest Minneapolis and seeks no relief against Transport Insurance Company.

ORDER

IT IS ORDERED:

1. The motion of Norwest Bank Minneapolis, N.A. for summary judgment is granted and judgment is granted in favor of Norwest Bank Minneapolis, N.A. and against the plaintiff, Briggs Transportation Company.

2. Judgment is also entered in favor of Transport Insurance Company and against the plaintiff, Briggs Transportation Company.