**Charles N. WOOTEN, Sr., Trustee,**

v.

**UNITED STATES of America, through the DEPARTMENT OF the INTERIOR, et al.**

**Civ. A. No. 85–1318 "L".**

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

Dec. 18, 1985.

Charles N. Wooten, Sr., Lafayette, La., for plaintiff.

Lawrence W. Moon, Jr., Lafayette, La., Debra Kasper and Geoffrey Heath, Washington, D.C., for defendants.

## MEMORANDUM RULING

DUHE, District Judge.

The trustee in this matter, Charles N. Wooten, Sr., seeks damages in excess of $18 million dollars from the United States Department of the Interior ("DOI") for alleged overcharges for federal royalty crude oil that the debtor, Evangeline Refining Company ("Evangeline"), purchased from the Government from July 1974 through December 1982. The trustee maintains that such overcharges violated the mandatory petroleum price regulations of the Department of Energy ("DOE") and its predecessor agencies in force from August 1973 through January 1981.

In addition the trustee also asserts that all transfers made to DOI by Continental Illinois National Bank and Trust Company of Chicago ("Continental") for the account of the debtor after Evangeline filed the Chapter 11 proceeding on January 6, 1983, are avoidable and recoverable by the trustee for the benefit of the estate pursuant to 11 U.S.C. § 549. Evangeline secured letters of credit issued by Continental in favor of DOI in order to enter into the contract initially. On December 1, 1982, DOI terminated the contract on grounds that Evangeline failed to pay for royalty oil deliveries. Pursuant to DOI's demand, Continental paid $2,387,892.00 for outstanding invoices, adjustments, and underbillings. The trustee alleges that the bulk of this payment occurred after Evangeline filed its petition for relief under Chapter 11 on January 6, 1983. Furthermore, Evangeline granted a mortgage to Continental on most of its property to secure possible indebtedness arising from drawdowns on the letters of credit, and the trustee alleges that these drawdowns constituted preferences or fraudulent conveyances under 11 U.S.C. §§ 547, 548.

On May 2, 1985, the bankruptcy court denied DOI's motion to dismiss in an order without opinion. DOI then moved for leave to appeal the decision and for withdrawal of the reference of the proceeding from the bankruptcy court pursuant to 28 U.S.C. § 157(d). This court granted the motion to withdraw the reference on July 2, 1985. Judge Shaw granted the Motion for Leave to Appeal on August 13, 1985, and simultaneously issued a briefing sched-

ule for the appeal. On August 30, 1985, DOI filed a Notice in Lieu of Brief, explaining that this court's order granting the motion for withdrawal of the reference made the appeal moot. On September 3, 1985, DOI filed a Motion for Reconsideration of its Motion to Dismiss. Judge Shaw then vacated his orders concerning the appeal and transferred the matter to this court.

DOI now moves this court to reconsider its motion to dismiss, which was denied by the bankruptcy court, on grounds that pursuant to Federal Rule of Bankruptcy Procedure 7012(b) and Federal Rule of Civil Procedure 12(b), this court lacks subject matter jurisdiction; this matter is barred by the statute of limitations and the doctrine of sovereign immunity; and plaintiff has failed to state a claim upon which relief can be granted.

The trustee argues that unless and until the bankruptcy court's decision is overturned on appeal, it remains a binding order subject to standard appellate review. *See In re Lion Capital Group,* 48 B.R. 329, 338 (D.C.N.Y.1985) (bankruptcy court's power to determine whether proceeding is core or non-core under § 157(b)(3) is binding and subject to standard appellate review). Bankruptcy judges may "hear and determine all cases under Title 11 and all core proceedings ... and may enter appropriate orders and judgments" subject to review under 28 U.S.C. § 158, 28 U.S.C. § 157(b)(1). Section 158 provides, in part:

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under Section 157....

. . . . .

(c) An appeal ... shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts....

Conversely, DOI asserts that this court's withdrawal of the reference of the matter renders its appeal moot.

According to DOI, the bankruptcy court no longer possesses authority to support an appeal following the withdrawal of the reference. *See Louisville and Nashville Railroad v. Mottley,* 211 U.S. 149, 153, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908) (appeal may not be heard when lower court lacks authority over case). In *Mottley* the trial court lacked jurisdiction to hear the matter initially. In this proceeding, however, the bankruptcy court had jurisdiction to hear and to decide DOI's Motion to Dismiss.

DOI argues additionally that the district court retains ultimate control over matters under 28 U.S.C. § 157, and cites *In re Wisconsin Steel Co.,* 48 B.R. 753 (N.D.Ill. 1985), and *In re UNR Industries, Inc.,* 45 B.R. 322 (N.D.Ill.1984), for the proposition that after withdrawal of the reference, district courts are not bound to follow prior rulings of the bankruptcy court. Both *Wisconsin Steel* and *UNR Industries,* however, are distinguishable from this matter.

In *Wisconsin Steel* the district court withdrew the reference of a matter and redecided a motion to dismiss and discovery motions because the bankruptcy court allowed counsel for one of the parties in the proceeding to write the opinions and orders in the motions. *Wisconsin Steel,* 48 B.R. at 766–67. The issue in *UNR Industries* was whether the district court could withdraw the reference of a non-core matter and proceed to trial therewith notwithstanding the fact that the bankruptcy court had entered an automatic stay pursuant to 11 U.S.C. § 362. Concluding that the non-core matter could be withdrawn, the district court reasoned, as follows:

If that section [157(b)(5)] could not be enforced until bankruptcy proceedings were concluded, it would no longer be needed since the stay would have ended and the bankruptcy court would no longer have the power to hold trials relating to the concluded case.

*UNR Industries,* 45 B.R. at 326.

■ The bankruptcy court denied DOI's motion to dismiss in an order without opin-

ion. Findings of fact and conclusions of law are unnecessary in determinations of motions decided on questions of law. *In re Scrap Disposal, Inc.*, 15 B.R. 296, 297 (Bankr.App. 9th Cir.1981). The district court should make an independent determination of the legal issues involved. *Stewart v. Jones*, 35 B.R. 392, 394 (S.D.Ala. 1983). *See Matter of Hammons*, 614 F.2d 399, 403 (5th Cir.1980). Thus, the proper standard of review of the issues of law is *de novo*.

■■■ DOI argues that this court lacks jurisdiction over the trustee's overcharge allegations because the exclusive remedy for violations of DOE price control regulations, contained in § 210 of the Emergency Stabilization Act, 12 U.S.C. § 1904 note ("ESA"), does not waive sovereign immunity. An action for overcharges for alleged violations of the DOE price regulations lies solely under § 210 of the ESA. *Lunday-Thagard Company v. Department of the Interior*, 773 F.2d 322 (1985). The Temporary Emergency Court of Appeals ("TECA") reasoned that since price control regulations implementing the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. § 754, into which § 210 of the ESA is incorporated, creates any overcharge claim, EPAA's remedy for alleged overcharges, § 210 of the ESA, is exclusive. P. 323. The doctrine of sovereign immunity bars claims arising under § 210 of the ESA. *Id. See McCulloch Gas Processing Corporation v. Canadian Hidrogas Resources, Ltd.*, 577 F.2d 712 (TECA), *cert. denied*, 439 U.S. 831, 99 S.Ct. 109, 58 L.Ed.2d 126 (1978) (doctrine of sovereign immunity bars plaintiff's § 210 claim against United States). The trustee maintains that *Lunday-Thagard*, is not a bankruptcy case. Nevertheless, the doctrine of sovereign immunity bars the trustee's overcharge allegations and this court lacks jurisdiction thereof.

The trustee maintains that § 106 of the Bankruptcy Code waives sovereign immunity. Section 106 provides, as follows:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106. DOI contends that the governmental unit must file a claim to waive immunity and the waiver is limited to the amount of the claim. *See In re Braniff Airways, Inc.*, 42 B.R. 443, 450 (Bankr. N.D.Tex.1984.) But courts have rejected as immaterial to their jurisdiction that the governmental unit has filed no proof of claim. *In the Matter of Willington Convalescent Home, Inc.*, 39 B.R. 781, 788 (D.Conn.1984). The legislative history of § 106 initially provided for a limited waiver, but the addition of § 106(c) broadened the scope of the statute. *Matter of Remke, Inc.*, 5 B.R. 299, 302 n. 1 (E.D. Mich.1980).

The original, identical House and Senate version of current § 106, contained in H.R. 8200 and S. 2266, were far narrower in scope. H.R. 8200 and S. 2266 provided:

§ 106. Waiver of sovereign immunity.

(a) A governmental unit that files a proof of claim under section 501 of this title is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit for which such governmental unit filed a proof of claim or interest under section 501 of this title any claim against such governmental unit that is property of the estate.

H.R. 8200, 95th Cong. 1st Sess. 324 (1977); S. 2266, 95th Cong., 2d Sess. 313 (1978). After H.R. 8200 and S. 2266 were sent to the Conference Committee, section 106 was amended for the last time. Sections 106(a) and (b) were reworded and § 106(c) was added. Included in an explanatory statement of § 106(c) that was given to both houses of Congress was the following instruction:

[S]ection 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit; contrary language in the House report to H.R. 8200 is therby overruled.

124 Cong.Rec.H. 11091 (Sept. 28, 1978) (remarks of Rep. Edwards); S. 17407 (Oct. 16, 1978) (remarks of Sen. DeConcini). The final version of section 106 "abandons the limited approach to the 'waiver' issue and more nearly approximates the broad approach of the Commission draft." *Willington,* 39 B.R. at 788.

■ This court has jurisdiction to consider the trustee's claim under § 547 because it contains the term "creditor" and § 106(c) therefore waives sovereign immunity for preference actions arising thereunder. *See In re T & D Management Co.,* 40 B.R. 781, 788–90 (Bankr.D.Utah 1984); *In re Prime,* 44 B.R. 924, 927 (Bankr.W.D.Mo.1984). The doctrine of sovereign immunity bars the trustee's claims arising under § 548(a)(2) and § 549, however, since the triggering terms designated in § 106(c) appear in neither section.

■ DOI next asserts that since the trustee's price control claims arose prior to January 6, 1982, one year before the complaint was filed, the Louisiana statute of limitations applies to bar the claims. *See* La.Civ.Code Art. 3492 (one year prescription period). The trustee claims that 28 U.S.C. § 2401(a) controls:

[E]xcept as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues....

The applicable statute of limitations for claims against the United States founded on the EPAA is the six year federal statute of limitations. *Wesreco, Inc. v. United States Department of the Interior,* (D.Utah 1984); *Glenrock Refinery, Inc. v. Department of the Interior,* No. C84–0264–B (D.Wyoming Dec. 5, 1984). *See Pollard v. United States,* 384 F.Supp. 304, 311 (M.D.Ala.1974) (applying analogous state statute of limitations to federal claim against state defendants and 28 U.S.C. § 2401 (a) to federal claim against United States). Section 2401(a) would not apply in a civil action against the United States when the action arises under a federal statute that expressly provides a longer or shorter limitations period. *Wesreco, supra. See, e.g.,* 28 U.S.C. § 2401(b) (two year limitation for tort claims). The court in *Wesreco* also reasoned that the federal limitations period applies "to give effect to the long standing axiom that Congress, not the fifty individual states, sets the terms and conditions under which the government can be sued." *Wesreco, supra.* For the foregoing reasons, the applicable provision is the six year federal limitations period, 28 U.S.C. § 2401(a).

■ DOI next asserts that the trustee's claim arising under 11 U.S.C. § 547 should be dismissed for failure to state a cause of action on grounds that letters of credit are neither property of the debtor nor property of the bankruptcy estate. *See In re Clothes, Inc.,* 35 B.R. 487, 488–89 (Bankr. D.N.D.1983); *In re M.J. Sales and Distributing Company,* 25 B.R. 608 (Bankr.S.D. N.Y.1982); *In re Page,* 18 B.R. 713, 715–16 (Bankr.D.D.C.1982). Section 547 permits the trustee to avoid certain preferential transfers of "an interest of debtor in property." The court in *In re Page* describes a letter of credit and its proceeds as "proper-

ty of the bank, not the debtors." 18 B.R. at 716. The court explained as follows:

> In issuing the letter of credit the Bank entered into an independent contractual obligation to pay [beneficiary of the letter of credit] out of its own assets. Although cashing the letter will immediately give rise to a claim by the Bank against the debtors pursuant to the latter's indemnification obligations, that claim will not divest the debtors of any property since any attempt to enforce that claim would be subject to an automatic stay.... 18 B.R. at 715–16.

No avoidable transfer occurred because the assets of Continental, rather than those of Evangeline, were depleted. Thus, the trustee's claim pursuant to 11 U.S.C. § 547 is dismissed for failure to state a cause of action.

Accordingly, DOI's motion to dismiss is granted on grounds that (1) the doctrine of sovereign immunity bars the trustee's overcharge allegations that arise under § 210 of the ESA; (2) the doctrine of sovereign immunity bars the trustee's claims pursuant to 11 U.S.C. §§ 548–49 since the triggering terms designated in 11 U.S.C. § 106(c) appear in neither section; and (3) no avoidable transfer under 11 U.S.C. § 547 occurred because assets of the bank, rather than those of the estate, were depleted.