Wallace LARSON and Margaret
Larson, husband and wife,
Plaintiffs,

v.

FIRST INTERSTATE BANK OF
ARIZONA, N.A., Defendant,

Federal Deposit Insurance Corporation,
as Receiver of Penn Square Bank,
N.A., Intervening Defendant.

No. Civ. 83–500 Phx. WPC.

United States District Court,
D. Arizona.

April 15, 1983.

Thomas C. Horne, of Campana & Horne, Phoenix, Ariz., for plaintiff.

Louis A. Stahl, of Streich, Lang, Weeks & Cardon, Phoenix, Ariz., for defendant.

Edward M. Lewis, of Lewis & Roca, Phoenix, Ariz., for intervening defendant.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

This action is before this Court following removal from Maricopa County Superior Court. Plaintiffs are Wallace and Margaret Larson. Defendants are First Interstate Bank of Arizona, N.A. (First Interstate) and the Federal Deposit Insurance Corporation (FDIC). Plaintiffs seek grant of a preliminary injunction to prevent First Interstate from honoring a call by FDIC on a letter of credit issued for the account of Larson by First Interstate in favor of Penn Square Bank, N.A., of Oklahoma (Penn Square). FDIC is the legal successor in interest of Penn Square Bank.

The events surrounding the instant request for a preliminary injunction began in 1981 when the Larsons purchased limited partnership interests in the "Eagle Drilling Partnership-1981", an oil and gas venture. The consideration paid for these interests consisted of cash and the Larson's causing First Interstate to issue an irrevocable standby letter of credit in the amount of $55,000 payable to Penn Square Bank as beneficiary. This letter of credit was issued to Penn Square Bank as collateral to secure loans made by Penn Square to Eagle Drilling for its oil and gas activities.

A number of unfortunate events then occurred to disrupt this arrangement. Penn Square Bank was declared insolvent by the Controller of the Currency on July 5, 1982 and the FDIC was appointed receiver of its assets. Eagle Drilling then defaulted on its loan obligations with Penn Square Bank. FDIC, as successor in interest to Penn Square Bank, subsequently called the letter of credit on February 7, 1983. FDIC sent a sight draft to First Interstate and requested payment of the $55,000 by wire.

Before First Interstate could pay FDIC the $55,000, however, the Larsons filed two lawsuits in Maricopa County Superior Court. The first lawsuit alleged a securities violation and named Eagle Drilling as defendant. The complaint alleges fraud in the offer and sale of the partnership interests and requests rescission as a remedy pursuant to A.R.S. § 44–2001. If such remedy is granted, the Larsons maintain that the letter of credit would be rendered void and unenforceable. This lawsuit remains pending at the present time as an adversary proceeding in the United States Bankruptcy Court for the District of Arizona as a result of its removal following Eagle Drilling's declaration of bankruptcy.

The second lawsuit filed in Maricopa County Superior Court named only First Interstate Bank as defendant. The complaint alleges fraud in the original 1981 partnership transaction and sought a temporary restraining order, preliminary injunction and permanent injunction against the bank's payment of the $55,000 to FDIC. Provisional relief was requested on the basis that should the letter of credit be paid, the Larsons, if they won their companion securities lawsuit, would have no legal remedy or means to obtain reimbursement because (1) Penn Square Bank has been declared insolvent, and (2) Eagle Drilling and other defendants in the securities action would be unable to reimburse plaintiffs. On February 9, 1983 the Maricopa County Superior Court issued a temporary restraining order preventing First Interstate Bank from paying the funds to FDIC. Thereafter, on March 14, 1983 FDIC was allowed to intervene as a party defendant in this action. FDIC then successfully had the action removed to this court pursuant to 12 U.S.C. § 1819.

The instant motion before this Court is plaintiffs' application for a preliminary injunction to prevent First Interstate from paying FDIC the $55,000 on the letter of credit. There exist two alternative tests for determining whether a preliminary injunction should issue under a given set of circumstances. Under one test, a preliminary injunction may issue if (1) the plaintiff will suffer irreparable injury if injunctive relief is not granted; (2) the plaintiff will probably prevail on the merits; (3) in balancing the equities, the defendants will not be harmed more than plaintiff is helped by the injunction; and (4) granting the injunction is in the public interest. *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 87 (9th Cir. 1975). The alternate test for granting a preliminary injunction requires the moving party to demonstrate that serious questions are raised in the case and that the balance of hardships tips sharply in plaintiff's favor. *White Mountain Apache Tribe v. State of Arizona*, 649 F.2d 1274, 1285 (9th Cir.1981); *Los Angeles Memorial Coliseum v. National Football League*, 634 F.2d 1197, 1200 (9th Cir.1980). Plaintiffs rely upon this latter standard in support of the instant request for a preliminary injunction.

Plaintiffs contend that a preliminary injunction is warranted because at least five serious questions exist with respect to this litigation. These are: (1) the question of fraud with respect to the transaction between Eagle Drilling and the Larsons; (2) the effect of the fact that Penn Square Bank allegedly knew or should have known from information it possessed that Eagle Drilling violated federal securities laws; (3) the effect of FDIC's alleged breach of a specific commitment of Penn Square Bank, which caused Eagle Drilling's default in the first instance; (4) because FDIC called the entire amount of the letter of credit due, FDIC's alleged violation of provisions

in the loan agreement between Penn Square Bank and Eagle Drilling which call for pro rata contribution among all investors who put up letters of credit; and (5) the need for consistent results among identically or nearly identically situated investors involved in litigation in different jurisdictions. On consideration of the briefs, affidavits and exhibits on file, and arguments of counsel, this Court is of the opinion that serious questions exist with respect to at least one relevant aspect of this litigation. Further, because the balance of hardships weighs heavily in favor of plaintiffs, the request for a preliminary injunction must be granted.

■ The starting point for analysis is U.C.C. § 5–114(2)(b), codified in Arizona as A.R.S. § 44–2714(B)(2). This section provides:

> In all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.

Under this section, payment on a letter of credit may be enjoined upon a showing of fraud in the underlying transaction. *See, e.g., Prutscher v. Fidelity International Bank,* 502 F.Supp. 535 (S.D.N.Y.1980); *United Bank, Ltd. v. Cambridge Sporting Goods Corp.,* 41 N.Y.2d 254, 392 N.Y.S.2d 265, 360 N.E.2d 943 (1976); *Sztejn v. Schroeder Banking Corp.,* 177 Misc. 719, 31 N.Y.S.2d 631 (1942). The issue thus faced by this Court is whether serious questions exist in this litigation with respect to fraud in the transaction underlying the letter of credit contract. Resolution of this question requires, in light of the general principle of independence of letter of

credit payment obligations, consideration of the nature and scope of the fraud exception.

Initially, First Interstate and FDIC contend that the fraud in the underlying transaction exception of Article 5 does not apply in this case. These parties point out that the instant letter of credit by its terms recites that it is to be governed by the Uniform Customs and Practice (U.C.P.). Further, A.R.S. § 44–2702(D) provides that the U.C.C. is not to govern any letter of credit made subject to the U.C.P. Despite such statutory provisions, however, courts finding the U.C.P. applicable still recognize a fraud in the underlying transaction exception to the letter of credit independence principle. Such recognition is based both on the fact that pre-code authority supporting the exception continues to govern even where Article 5 is not controlling and that the terms of the U.C.P. are not to the contrary. *United Bank, Ltd. v. Cambridge Sporting Goods Corp.,* 41 N.Y.2d 254, 392 N.Y.S.2d 265, 269–70 n. 2, 360 N.E.2d 943, 947–48 n. 2 (1976); *see Stromberg-Carlson Corp. v. Bank Melli Iran,* 467 F.Supp. 530, 532 n. 5 (S.D.N.Y.1979); *Prutscher v. Fidelity International Bank,* 502 F.Supp. 535, 537 (S.D.N.Y.1980). Even though the U.C.P. applies to the letter of credit in this case, the fraud exception still may apply as a basis for injunction of payment.

With respect to the fraud exception itself, plaintiffs rely heavily upon the alleged fraud in the transaction between themselves and Eagle Drilling. This transactional fraud, however, is irrelevant to the motion now before this Court. The letter of credit cases uniformly hold that payment will not be enjoined unless the letter of credit *beneficiary* is guilty of fraudulent conduct.[1] *See, e.g., Stromberg-Carlson*

---

1. The U.C.C. and its official comments are silent with respect to the meaning and scope of the fraud in the transaction exception to the independence principle. However, "the legislative history of section 5–114(2) indicates that 'fraud in the transaction' was meant to ... provide for injunctive relief based solely on the beneficiary's misperformance of the underlying con-

tract." Note, *"Fraud in the Transaction": Enjoining Letters of Credit During the Iranian Revolution,* 93 Harv.L.Rev. 992, 1004 (1980). This limited focus upon the conduct of the beneficiary logically makes sense in that it is the sole entity with power to call the letter. An extension of the fraud exception such as that contemplated by plaintiffs in this action would severely

*Corp. v. Bank Melli Iran,* 467 F.Supp..530 (S.D.N.Y.1979); *Colorado National Bank of Denver v. Board of County Commissioners,* 634 P.2d 32, 39 (Colo.1981); *Intraworld Industries, Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316, 324–25 (1975). The beneficiary under the instant letter of credit is Penn Square Bank, not Eagle Drilling. This Court must therefore scrutinize the allegations of plaintiffs as to the loan obligations to be performed by Penn Square Bank with respect to Eagle Drilling.

One of plaintiffs' allegations with respect to the Eagle Drilling—Penn Square loan agreement is that the FDIC, as successor in interest to Penn Square, breached a loan commitment of the Penn Square Bank. This breach by FDIC allegedly caused the default by Eagle Drilling on its loan obligations, which in turn led to the FDIC call on the letter of credit. Specifically, plaintiffs maintain that an agreement existed in which 20 per cent of the amount of each loan made to Eagle Drilling was to be held in reserve by Penn Square Bank to be used for making interest payments on the loan. Plaintiffs further allege that Penn Square Bank agreed to advance certain of these funds for an interest payment, but the FDIC, which took control of Penn Square shortly thereafter, reversed the transaction. In support of these allegations, plaintiffs cite specific language in the loan agreement which can be construed to set up a 20 per cent interest reserve. In addition, in support of the agreement by Penn Square to advance funds from this reserve, plaintiffs have submitted an affidavit by the president of Eagle Drilling attesting to this fact and a letter from Eagle Drilling which followed up the agreement.

Based on the above, it is this Court's opinion that a serious question exists in this litigation as to whether the FDIC in the first instance breached an agreement which caused the Eagle Drilling default. If these allegations are true, a certification under these circumstances by

compromise the utility of the letter of credit as an independent bank guarantee device. *See*

FDIC to First Interstate that it is entitled to call the letter of credit may be fraudulent. The letter of credit may therefore be subject to injunction. *Dynamics Corp. v. Citizens and Southern National Bank,* 356 F.Supp. 991 (N.D.Ga.1973).

Having determined that questions of a serious nature exist in this action, it remains for this Court to assess the balance of hardships among the parties involved. This Court is of the opinion that the balance of hardships is clearly in the plaintiffs' favor. Payment of the letter of credit at this stage of the litigation would, if plaintiffs' allegations prove true, subject the Larsons to an additional loss of $55,000 due to fraud. A delay in payment of this amount is less significant in its impact upon the FDIC. Moreover, First Interstate's arguments of loss of reputation and commercial honor in the business community and maintenance of the letter of credit as a useful commercial device must also fail. "[T]he failure to issue an injunction where otherwise appropriate would send a clear signal to those inclined to engage in fraudulent activities that they are likely to be rewarded .... there is at least as much public interest in discouraging fraud as in encouraging the use of letters of credit." *Itek Corp. v. First National Bank of Boston,* 511 F.Supp. 1341, 1351 (D.Mass.1981). Issuance of a preliminary injunction is therefore appropriate in this action.

IT IS ORDERED:

Plaintiffs' request for issuance of a preliminary injunction to enjoin payment by First Interstate Bank of Arizona, N.A. of the letter of credit comprising the subject of this action is granted. The existing bond shall be sufficient and remain in full force and effect. Counsel for plaintiff will promptly submit a form of preliminary injunction for approval by the Court.

*generally* Harfield, *Identity Crisis in Letter of Credit Law,* 24 *Ariz.L.Rev.* 239 (1982).