In re DIACONX CORPORATION t/a Computerland of Paoli, Bala Cynwyd and Media, Debtor.

DIACONX CORPORATION t/a Computerland of Paoli, Bala Cynwyd and Media, William R. Lidle and Kathleen G. Lidle, Plaintiffs,

v.

HAMILTON BANK, Defendant.

Bankruptcy No. 86–00167G.
Adv. No. 86–1331G.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 13, 1987.

---

**344**

Janet M. Sonnenfeld, Philadelphia, Pa., for plaintiffs, Diaconx Corp., William R. Lidle and Kathleen G. Lidle.

George J. Shoop, Rhoda, Stoudt & Bradley, Reading, Pa., for defendant, Hamilton Bank.

## OPINION

BRUCE FOX, Bankruptcy Judge:

The issue before me is whether I should exercise my equitable powers under 11 U.S.C. § 105 to stay pending state court proceedings which have been instituted by a creditor against the principal of a bankruptcy debtor. The creditor, Hamilton Bank ("Hamilton"), seeks to enforce in state court a contractual agreement made by William and Kathleen Lidle ("Mr. and Mrs. Lidle"), guaranteeing payment of indebtedness incurred by the debtor, Diaconx Corp. ("Diaconx"). For the reasons set forth below,[1] I will deny Diaconx's request for injunctive relief.[2]

### I.

Diaconx is a closely held corporation which, prior to its bankruptcy filing, was a franchisee of Computerland and traded under the name of Computerland of Paoli. Mr. Lidle is the president and majority shareholder of the corporation.

In April 1984 Diaconx entered into two agreements with Hamilton to provide financing for the business: a commercial loan note ("note") in an original amount of $300,000.00 and a line of credit agreement

("line of credit") of $700,000.00. In connection with these credit agreements, Diaconx granted Hamilton a first lien in all of the corporation's inventory, equipment, accounts receivable, contract rights, machinery, furniture, fixtures, chattel paper, general intangibles, after acquired property and cash and non-cash proceeds.

Mr. and Mrs. Lidle executed a written guaranty of the corporation's indebtedness to Hamilton in the amount of $400,000.00, plus interest. The guaranty contained a confession of judgment clause upon default and acknowledged that Mr. and Mrs. Lidle had executed a collateral mortgage in favor of Hamilton as security for the guaranty. The mortgage, in the amount of $400,000.00, encumbers the Lidles' real property located at 223 109th Street, Stone Harbor, N.J. The Lidles also own residential property in Paoli, Pennsylvania. Mr. Lidle testified that the Stone Harbor property has a fair market value of approximately $125,000.00 and that Hamilton's mortgage is junior only to a mortgage in the amount of approximately $16,000.00. Mr. Lidle further testified that the Paoli property is worth approximately $160,000.00 and that it is subject to a senior mortgage of $53,000.00.

On January 13, 1986, Diaconx filed a voluntary petition under chapter 11 of the Bankruptcy Code. Its major secured creditor is Hamilton which held a claim of approximately $896,000.00 when the bankruptcy was filed. The debtor's unsecured debt totals approximately $250,000.00.

Prior to its bankruptcy, Diaconx was engaged in the business of retail sales of computers and related items and services. At its height, the debtor operated four stores and employed twelve employees. Since filing under chapter 11, Diaconx has

---

**1.** This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankr. Rule 7052. This matter is a core proceeding. *See In re Monroe Well Service, Inc.,* 67 B.R. 746, 754 (Bankr.E.D.Pa.1986), *appeal docketed* (E.D. Pa.). Accordingly, I will enter a final order pursuant to 28 U.S.C. § 157(b)(1).

**2.** Mr. and Mrs. Lidle joined as plaintiffs in this adversary proceeding. Hamilton has not raised any issues regarding this court's jurisdiction over their claim. *See In re Diaconx Corp.,* 65 B.R. 139 (E.D.Pa.1986). In light of my decision denying the requested relief, it is unnecessary for me to separately consider any jurisdictional issues.

lost its Computerland franchises, given up its leases and closed those operations.

In January 1986, shortly after the bankruptcy filing, Diaconx and Hamilton entered into a cash collateral stipulation covering the subsequent ninety (90) day period to allow Diaconx the use of cash collateral. The stipulation was approved by the court on January 30, 1986. It also included provisions: (a) conditioning the use of cash collateral on a schedule of payments to Hamilton by Diaconx; (b) requiring Hamilton to forbear form enforcing its rights against Mr. and Mrs. Lidle under the guaranty until the earlier of October 1, 1986 or the date upon which all prepetition collateral was liquidated, applied to the indebtedness and found to be insufficient to satisfy the indebtedness; and (c) requiring Mr. and Mrs. Lidle to execute a "Consent of Sureties" agreement. Mr. and Mrs. Lidle did, in fact, execute the consent of sureties agreement on January 24, 1986. In signing that document, the Lidles consented to the terms and conditions of the Diaconx-Hamilton cash collateral stipulation and ratified and reaffirmed their guaranty agreement with Hamilton.

Diaconx complied with the foregoing stipulation and entered into a second stipulation which extended the period during which the debtor was authorized to use cash collateral to June 30, 1986. Diaconx made payments totalling approximately $719,000.00 to Hamilton, or roughly 80% of the prepetition debt. These payments were made possible by Mr. Lidle's efforts in selling off the debtor's inventory.

On June 13, 1986, Diaconx instituted an adversary proceeding against Hamilton and certain of its employees by filing a complaint entitled "complaint to determine secured status and for damages resulting from breach of financing agreement, economic duress, business coercion, interference with contractual relations, fraud and punitive damages." William Lidle joined as a plaintiff in the complaint. The first three counts of the complaint requested damages in excess of $19 million dollars on behalf of Diaconx and the last count sought damages of $19 million on behalf of Mr. Lidle. Because the plaintiffs requested a jury trial, the matter was transferred to the district court. In the district court, Lidle was dismissed as a party for lack of jurisdiction. *See In re Diaconx Corp.*, 65 B.R. 139 (E.D.Pa.1986). In September 1986, after a jury trial, a verdict and judgment was entered against Diaconx and in favor of Hamilton. Posttrial motions are pending.

On October 23, 1986, Hamilton sent a letter to Mr. and Mrs. Lidle demanding full payment of Diaconx's indebtedness in accordance with the guaranty agreement and the consent of sureties form. Demand was made for $352,626.16.[3] In November 1986, Hamilton filed a confession of judgment in the Court of Common Pleas, Chester County, Pa. in the amount of $353,442.20, plus $53,016.33 in additional legal fees. The entry of the judgment imposed a lien against Mr. and Mrs. Lidle's Paoli property. *See* 42 Pa.C.S. § 4303.

In response to the confession of judgment, Mr. and Mrs. Lidle filed a petition to strike or, in the alternative, open the confessed judgment in state court. Enforcement of the confessed judgment has been stayed pending further order of the state court.

Simultaneously with the Lidles' state court petition, Diaconx filed a complaint and motion for preliminary injunction in this court seeking an injunction to restrain Hamilton from pursuing Mr. and Mrs. Lidle on the guaranty. A hearing on the motion was held on December 15 and 22, 1986. The parties have agreed that the hearing on the instant motion be deemed the trial on the final injunction as well. *See* Bankr. Rule 7065 and Fed.R.Civ.P. 65(a)(2).

---

**3.** The letter itemized the demand as follows:

| | |
|---|---|
| $203,303.42 | outstanding principal balance |
| 5,514.59 | accrued interest |
| 118,802.50 | attorney's fees |
| 16,069.63 | expert witness fees in the district court litigation |
| 8,936.02 | court costs and "legal expenses" |
| $352,626.16 | Total |

## II.

This court recently had occasion to consider the scope and propriety of the exercise of its powers under 11 U.S.C. § 105 in *In re Monroe Well Service, Inc.* 67 B.R. 746 (Bankr.E.D.Pa.1986), *appeal docketed* (E.D.Pa.). In *Monroe Well Service,* after surveying much of the caselaw involving restraint of creditor actions against non-debtor third parties, I held that "the bankruptcy court, as a court of equity, has the power to issue injunctions under section 105 to prevent significant harm to the estate *in appropriate circumstances." Id.,* at 752 (footnote omitted) (emphasis added). I enunciated a four prong test for determining whether an injunction would issue: (1) there must be a danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize; (2) there must be a reasonable likelihood of a successful reorganization; (3) the court must balance the relative harm as between the debtor and the creditor who would be restrained; and (4) the court must consider the public interest, which requires a balancing of the public interest in successful bankruptcy reorganizations with other competing societal interests. *Id.,* at 753.

The major bases of Diaconx's request for relief in this case are: (1) that Mr. and Mrs. Lidle are facing immediate and irreparable harm from Hamilton's actions which could result in their being "forced on the street;" and (2) that the trauma of losing his family's home will prevent Mr. Lidle from concentrating on reorganizing Diaconx. After considering these arguments and the evidence introduced at trial, I conclude that Diaconx has not established grounds for the issuance of an injunction against Hamilton.

■ In its first argument, Diaconx has confused the proper function of this court. As set forth in *Monroe Well Service,* the only basis for the exercise of this court's equity power to restrain legal action against a nondebtor is the threat of harm to the estate or the debtor's ability to reorganize. While there is little doubt that the loss of a corporate officer's home would be

a traumatic event, it does not automatically translate into irreparable harm to the corporate debtor. In its memorandum of law, Diaconx asks rhetorically: "where does the question of injuctive [sic] relief belong?" To the extent Diaconx is referring to harm to the Lidles, the answer is "in the state courts." It is not this court's function to prevent harm, even irreparable harm, to non-debtor third parties. If, as Diaconx suggests, the likelihood is that it will prevail in the district court lawsuit thereby eliminating its guarantors' liability to Hamilton, the court of common pleas has ample power to stay enforcement of Hamilton's confessed judgment against Mr. and Mrs. Lidle. *See* Pa.R.Civ.P. 3121(b)(2).

I also note that, through their petition to strike or open judgment, Mr. and Mrs. Lidle have raised various defenses to the amount of judgment which was entered. In particular, they challenge the validity of the amount of attorney's fees claimed, which is an issue of state law unconnected to the outcome of the district court matter. I have no reason to believe that the state courts will not give ample consideration to the defenses raised. Thus, there is no evidence that Mr. and Mrs. Lidle's interest can only be protected in this court.

■ Diaconx's second argument is closer to the mark in its suggestion that the corporate debtor will be harmed by enforcement of the Lidles' personal guaranty. A number of courts have enjoined legal action against non-debtor corporate officers upon a showing that the officer's are necessary for and would otherwise be diverted from the formulation of a reorganization plan. *E.g., In re Kasual Kreation, Inc.,* 54 B.R. 915 (Bankr.S.D.Fla.1985); *Matter of Provincetown Boston Airline, Inc.,* 52 B.R. 620 (Bankr.M.D.Fla.1985). However, Diaconx has not made a sufficient showing in this case to justify the requested relief.

The evidence does not support a finding that the formulation of a plan or the potential for reorganization will be affected by the enforcement of the guaranty. Since January 1986, Mr. Lidle's business efforts have been devoted primarily toward liqui-

dating the debtor's assets. Although he asserted that he has been attempting to transform Diaconx from a retail outfit into a consulting business, he conceded that only $5,000.00 in gross income had been generated from consulting in 1986.[4] Further, no revenue from consulting has been obtained since June 1986. In short, not much business is being run. Therefore, I cannot conclude, as the court did in *Kasual Kreation,* that the non-debtors "are essential to the operation of the Debtor's business during the forthcoming season." 54 B.R. at 917.

In its memorandum of law, Diaconx is perhaps most candid when it contends that the threat of losing his home will render Mr. Lidle "unable to concentrate on pursuing the District Court suit." This statement is a recognition that Diaconx's potential for reorganization appears to hinge on the outcome of the district court litigation. However, I cannot agree that permitting the state court action to proceed will have much effect on Diaconx's chances for a successful reorganization. The trial of the district court matter has been completed. The posttrial motion stage of a case is not ordinarily very "client intensive." Such motions are prepared by counsel and raise purported legal errors that were committed during the course of the trial. In this case, the motions and supporting memorandum of law have already been prepared and filed with the district court by Diaconx's counsel. (*See* Exhibit D–5). Thus, even accepting that some additional work might be necessary after the trial transcript becomes available, it is difficult to see why there is a need for substantial participation by Mr. Lidle. Moreover, to the extent Mr. Lidle will be devoting his efforts to matters that are in litigation, it is also difficult to see why his time should be available for the district court action but not the state court action. Nor am I convinced that it would be equitable to permit Diaconx to proceed against Hamilton on a claim which, if successful, Mr. Lidle admits will benefit

not only Diaconx but also himself personally, while simultaneously denying Hamilton the right to proceed on its guaranty. It would be particularly unfair in light of Mr. and Mrs. Lidle's reaffirmation of their guaranty obligations at the beginning of this bankruptcy case in connection with the cash collateral stipulation.

In short, the line of cases under 11 U.S.C. § 105 in which courts have enjoined actions against principals and officers of chapter 11 debtors are based on a showing that absent the injunction the debtor will be adversely affected by the loss of either the third party's necessary skill and expertise or by the loss of assets necessary for the continued operation or reorganization of the debtor. *See e.g., In re Monroe Well Service, Inc.,* (injunction issued to protect flow of operating funds to debtor); *In re Northlake Building Partners,* 41 B.R. 231 (Bankr.N.D.Ill.1984) (injunction issued to prevent enforcement of guarantee against general partner to prevent impairment of his ability to execute critical management functions); *In re Lahman Manufacturing Co.,* 33 B.R. 681 (Bankr.D.S.D.1983) (injunction issued to prevent enforcement of guaranty against officer's unencumbered assets which were the anticipated source of financing for the plan of reorganization). I have already observed that the chances of a successful reorganization may depend on the outcome of litigation and that Mr. Lidle's efforts are not a substantial factor in that litigation at this time. I note also that there is no evidence that the assets of Mr. and Mrs. Lidle against which Hamilton wishes to proceed have been pledged for the debtor's use in its reorganization. Thus, neither factor usually present in cases in which injunctions have been granted exists here.

Finally, I am doubtful about Diaconx's prospects for reorganization, the second prong of the test set forth in *Monroe Well Service.* This bankruptcy was filed almost one year ago. Since then, no plan of reor-

---

**4.** On "rebuttal", Mr. Lidle amended this testimony to state that Diaconx derived greater income from his consulting services, but could not state with any clarity the amount of such income. Even accepting this later testimony would not alter my conclusion not to grant relief.

ganization has been filed. Diaconx's primary activity has been the liquidation of its assets. The sole hope for the financing necessary for reorganization is the district court lawsuit against Hamilton. However, the jury returned a verdict against Diaconx in that case. Without intimating one way or another about the merits of the posttrial motions, I cannot conclude that Diaconx's has demonstrated a reasonable likelihood of effecting a successful reorganization where success is dependent on obtaining and winning a new trial after an adverse jury verdict.

### III.

For the reasons set forth above, Diaconx's motion for a preliminary injunction will be denied. An order consistent with this opinion will be entered.