**In re GUY C. LONG, INC., Debtor.**

**GUY C. LONG, INC., the Committee of Unsecured Creditors and Edgemont Stone & Supply Company, Plaintiffs,**

**v.**

**DEPENDABLE INSURANCE COMPANY and Provident National Bank, Defendants.**

**Bankruptcy No. 87–01367F.
Adv. No. 87–0435G.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 19, 1987.

Mitchell W. Miller, Miller & Miller, Mary F. Walrath, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for debtor/movant/plaintiffs.

Katherine McAlice, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for Committee of Unsecured Creditors' Committee, and Edgemont Stone & Supply Co., plaintiffs.

Nathan B. Feinstein, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for Dependable Ins. Co., defendant.

Brett K. Kunin, Philadelphia, Pa., for Provident Nat. Bank.

## OPINION

BRUCE FOX, Bankruptcy Judge:

At issue is whether the plaintiffs are entitled to a preliminary injunction which would prevent payment under a letter of credit. Plaintiffs are the debtor, the committee of unsecured creditors, (appointed pursuant to 11 U.S.C. 1102(a)(1), and an unsecured creditor, Edgemont Stone & Supply Company (Edgemont).[1] The defendants are Provident National Bank (Provident), which is the issuer of the letter of credit, and Dependable Insurance Company (Dependable) which is the beneficiary of the letter of credit. Plaintiffs raise three grounds in seeking their injunction: first, that Dependable's demand for payment under the letter of credit violates the automatic stay provisions of 11 U.S.C. § 362(a); second, that plaintiffs meet the standard for the granting of injunctive relief under 11 U.S.C. § 105(a); and, third, that state law permits plaintiffs to demand an injunction against payment. After consideration of the evidence adduced at trial, I conclude that plaintiffs' request for preliminary injunctive relief is unwarranted.[2]

### I.

The relevant facts are not complicated. The debtor, Guy C. Long, Inc., is in the construction business and is one of a number of contractors which participated in the construction of a building in an industrial park near Wilmington, Delaware. The building owner is Citibank-Delaware and the project manager was Healy/Mellon-Stuart. The debtor's portion of the project included drywall construction and the formation of steel studs. In order to participate in this project, the debtor was required to obtain a performance bond; and, in order to obtain the bond, the debtor was required to obtain a letter of credit. Apparently, the debtor was unable to obtain a letter of credit on its own. Therefore, Edgemont, a regular supplier of the debtor, purchased a standby letter of credit on the debtor's behalf with Dependable, which provided the performance bond, as the beneficiary. This letter, purchased from Provident on June 5, 1986, was in the amount of $49,739.00 and was to remain outstanding for one year. However, in accordance with its terms, the letter was to be automatically extended for additional one year periods unless Provident notified Dependable to the contrary thirty days prior to expiration. Provident gave no such notice, and so the letter of credit remains in effect.

According to the letter's terms, Dependable is permitted to demand payment upon this irrevocable letter of credit in the following manner:

We hereby establish our irrevocable letter of credit in your favor and authorize you to draw on us, up to an aggregate amount of forty-nine thousand sev-

---

1. Counsel for the creditors' committee also represents Edgemont.

2. This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankr. Rule 7052.

en hundred thirty-nine and 00/100 U.S. dollars (US $49,739.00) available by your draft(s) at sight accompanied by your bond(s) or undertaking(s) at the request of Guy C. Long, Inc., and that you have incurred liability, or that a situation exists under which, in the sole judgment of the surety, claim may be made for loss, cost or expense, and that monies represented by your draft(s) are required in the discretion of the surety for its protection and for the protection of its co-surety(ies) and re-insurer(s), if any, under said bond(s) or undertaking(s) or under agreement(s) of indemnity executed by Guy C. Long, Inc.

There is no dispute that Dependable has demanded payment in the required manner and that Provident is willing to comply with its duties under the letter and to pay Dependable the requisite sum.

Once payment is made, the letter of credit further states:

Your acceptance of this credit will constitute your agreement to repay to Guy C. Long, Inc. any funds paid by us to you hereunder and not used by you in satisfaction of or reimbursement of any loss, cost, claim or expense of any nature whatsoever incurred by you, (including unpaid premiums), on any such bond(s) or undertaking(s) or agreement(s) of indemnity as aforesaid.

At trial, the debtor, through its vice-president, testified that the debtor fully completed performance on the Citibank building and was fully paid for its work except for the ten percent "retainage." He also testified that the debtor had not engaged any subcontractors and that it had fully reimbursed all of its material suppliers on this project. These suppliers signed releases in favor of the debtor which, in turn, had been forwarded to the project manager. From this, the vice-president testified that no claim against the debtor under the performance bond could be made.

The debtor did acknowledge that a lawsuit had been filed in state court in Delaware in October 1986 by Hilti, Inc. ("Hilti")

against Citibank-Delaware, the debtor, and others claiming that Hilti was an unpaid supplier of the debtor, that the supplies involve the Citibank project and that damages were sought along with a mechanic's lien. This suit is still pending in state court. The debtor strongly denied any liability to Hilti that was related to the Citibank project because Hilti supplies were not utilized.[3] The debtor also acknowledged that all persons employed by the debtor on the project were paid in full, but that the debtor had not yet forwarded all benefit payments due or all taxes which were withheld.

## II.

The threshold questions in this case involve the nature of this court's jurisdiction over the plaintiffs' three claims. The defendants do not dispute that the bankruptcy court has core jurisdiction, and the authority to enter a final order, with respect to the debtor's assertion that the automatic stay bars Dependable from demanding payment under the letter of credit. *See* 28 U.S.C. § 157(b)(2)(G). Nor do the defendants question that the request for an injunction under 11 U.S.C. § 105 is a core matter. *See In re Monroe Well Service, Inc.*, 67 B.R. 746 (Bankr.E.D.Pa.1986). They do contend, however, that this court lacks all jurisdiction over plaintiffs' claim that, under applicable state law, an injunction should be issued against Dependable and Provident. In response, the plaintiffs argue that it is core proceeding.

Plaintiffs' third claim, created solely by state law and brought by the debtor and a non-debtor against entities which are not creditors of the debtor is, at most, a related proceeding. *See In re Athos Steel and Aluminum, Inc.*, 71 B.R. 525, 534 (Bankr. E.D.Pa.1987). To determine whether the proceeding is related, I must determine whether its outcome

could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any

---

**3.** The vice president who testified added that Hilti had been paid some funds by the debtor to

insure that, if any supplies had been used inadvertently, Hilti was paid for their use.

way impacts upon the handling and administration of the bankruptcy estate. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984).

█ I conclude that this action to enjoin payment of the letter of credit can have an effect on the bankruptcy case and, therefore, is a related proceeding. The letter of credit provides that any funds received by Dependable and not used in satisfaction of claims made against the bond must be repaid to the debtor. If the letter of credit is paid, Dependable will receive almost $50,-000.00 from Provident. In light of the testimony presented by the debtor, only a small portion of those funds may be needed to pay claims made against the bond and the balance will go to the debtor. Thus, the outcome of this proceeding may determine whether a portion of the proceeds of the letter of credit are paid to the estate,[4] which certainly may have an impact on the administration of the case.

█ Moreover, if the letter of credit is paid, Provident will assert a claim against Edgemont which is likely to then assert a claim against the debtor. Presumably, any claim by Edgemont against the debtor attributable to its liability on the letter of credit will be mirrored by a decrease in claims by other creditors of the debtor who were paid by the bond itself; thus, regardless of the outcome of this proceeding, the total amount of claims against the debtor should not change. Nevertheless, the identity of the holders of the claims may be affected. Payment of the letter of credit may result in Edgemont holding a larger claim than it presently has. This, in turn, could affect Edgemont's classification in a plan of reorganization or the outcome of the voting of particular class of creditors.

Therefore, even though the effect may not be substantial, I conclude that there may be a sufficient impact on the estate to provide for jurisdiction.[5] *See In re Bowling Green Truss, Inc.*, 53 B.R. 391 (Bankr. W.D.Ky.1985) (claim against non-debtor held related because its outcome could affect size of a secured claim against the estate).

### III.

█ Plaintiffs argue that payment by Provident under the letter of credit would violate the statutory injunction established by section 362(a). That injunction serves a dual purpose, protecting both creditors and the debtor:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors....

H.R.Rep. No. 95–595, 95th Sess. 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296–6297. *Accord, Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446 (3d Cir.1982); *In re Wagner*, 74 B.R. 898, (Bankr.E.D.Pa., 1987). In general, section 362(a) enjoins entities from taking any action enjoins entities from taking any action

---

**4.** It is therefore ironic that the debtor seeks to restrain Dependable from calling in the letter of credit. Of course, Edgemont's incentive for doing so is obvious.

**5.** After hearing a related proceeding, a bankruptcy must submit proposed findings of fact and conclusions of law to the district court which considers the proposed findings and conclusions and then enters a final order or judgment. 28 U.S.C. § 157(c)(1). This case is still in the preliminary stages as the plaintiffs seek

only a preliminary injunction. Since a preliminary injunction is an interlocutory order, not a final order, I need not submit proposed findings to the district court; I may issue an order granting or denying the preliminary injunction. *In re Lion Capital Group*, 46 B.R. 850 (Bankr.S.D. N.Y.1985). *See generally In re Earle Industries, Inc.*, 72 B.R. 131, 135 (order denying motion to abstain is interlocutory and may be issued by the bankruptcy court).

against the debtor or the debtor's property in connection with a prepetition debt. Plaintiffs contend that the letter of credit, or its underlying funds, is property of the debtor's estate which Dependable is seeking to collect. They also argue that Dependable is attempting to recover on a prepetition debt. I disagree. Neither the letter nor the funds belong to the estate; moreover, to the extent Dependable has any prepetition claim against the debtor, *but see Matter of M. Frenville Co.,* 744 F.2d 332 (3d Cir.1981), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), its action in demanding payment from Provident is akin to proceeding against a guarantor which is not prohibited by section 362(a).[6]

A cogent description of the origin and purposes of the letter of credit has been provided by the Third Circuit Court of Appeals:

Originally conceived as a means of facilitating international sales of goods, the letter of credit has recently come to serve a variety of purposes, such as ensuring the payment of construction loans, guaranteeing the performance of obligations, and supporting the issuance of commercial paper. In contrast to its traditional function, the letter of credit in its newer variations frequently serves as a guaranty, and the issuer anticipates that it will not be called upon to honor the credit. Accordingly, this form of the device is known as a standby or guaranty letter of credit. . . .

Whatever the context in which it is being employed, the letter of credit serves the basic purpose of providing an inexpensive means of assuring payment in the course of a transaction to the party that furnishes the goods or services. It does this by creating a primary obligation on the part of the issuer of the letter of credit to pay upon the party's compliance with the terms and conditions enumerated in the letter, which usually calls for the presentation of specified documents. Thus, the letter of credit facilitates the underlying transaction both by substituting the known and secure credit of the issuer, such as a bank, for the unknown and perhaps risky credit of the other party to the underlying transaction, and by ensuring payment "up front," thereby shifting the burden of litigation to the dissatisfied purchaser of the goods or services.

*Insurance Company of North America v. Heritage Bank, N.A.,* 595 F.2d 171, 173 (3d Cir.1979) (footnote omitted); *accord, Matter of Val Decker Packing Co.,* 61 B.R. 831, 837 (Bankr.S.D.Ohio 1986). *See generally* Rubenstein, *The Issuers' Rights and Obligations Under a Letter of Credit,* 17 U.C.C.L.J. 125 (1984).

Although not in this case, typically the letter of credit represents three distinct agreements. The bank has an agreement with its customer, (Edgemont), concerning the issuance of a letter of credit, its cost, and the customer's duty to reimburse the bank upon the bank's honoring a demand for payment. The letter of credit itself reflects the terms of an agreement between the bank and the beneficiary involving, *inter alia,* the requirements for making the demand for payment and the expiration date of the letter. There may also be a contractual agreement between the customer and the beneficiary which gives rise to need for the letter of credit. *Insurance Company of North America v. Heritage Bank,* 595 F.2d at 173. Were the debtor in this instance the customer, as would be typical, the customer-beneficiary agreement would be the performance bond. However, here Edgemont was the customer and the record does not reflect any agreement between Edgemont and Dependable.

The obligation existing between the bank and the beneficiary is independent of the other agreements which may exist. *Id.* It is the independence of that agreement, by which the bank commits its own funds and then must look to its customer for reimbursement, which has caused virtually all courts, both under the present Bankruptcy

---

6. A "codebtor" stay exists only in chapter 13. *See* 11 U.S.C. § 1301. Here, the debtor filed its voluntary petition in bankruptcy under chapter 11 on March 20, 1987.

Code as well as the former Bankruptcy Act, to conclude that payment of a letter of credit does not violate the automatic stay. *E.g., In re Marine Distributors, Inc.,* 522 F.2d 791 (9th Cir.1975); *In re Page,* 18 B.R. 713 (D.D.C.1982); *Matter of Val Decker Packing Co; In re Illinois-California Express, Inc.,* 50 B.R. 232 (Bankr.D.Colo. 1985); *In re Price Chopper Supermarkets, Inc.,* 40 B.R. 816 (Bankr.S.D.Cal. 1984); *In re Briggs Transportation Co.,* 37 B.R. 76 (Bankr.D.Minn.1984); *In re Clothes, Inc.,* 35 B.R. 487 (Bankr.D.N.D. 1983); *In re Pine Tree Electric Co.,* 34 B.R. 199 (Bankr.D.Me.1983); *In re L.B.G. Properties, Inc.,* 33 B.R. 196 (Bankr.S.D. Fla.1983); *In re Leisure Dynamics, Inc.,* 33 B.R. 171 (Bankr.D.Minn.1983); *In re North Shore & Central Illinois Freight Co.,* 30 B.R. 377 (Bankr.N.D.Ill.1983); *In re M.J. Sales & Distributing Co.,* 25 B.R. 608 (Bankr.S.D.N.Y.1982); *In re Printing Department, Inc.,* 20 B.R. 677 (Bankr.E.D. Va.1981). *See also In re Minoco Group of Companies, Ltd.,* 799 F.2d 517, 520 n. 3 (9th Cir.1986).

The few courts to conclude otherwise have focused upon the bank's ability to seek reimbursement against the debtor by means of security interest the bank has in property belonging to the debtor. *Matter of Twist Cap, Inc,* 1 B.R. 284 (Bankr.M.D. Fl.1979). *See In re Air Conditioning, Inc. of Stuart,* 55 B.R. 157 (Bankr.S.D.Fla. 1985). *But see Matter of St. Petersburg Hotel Associates, Ltd.,* 37 B.R. 380 (Bankr. M.D.Fla.1984) (Judge Paskay retreats from his holding in *Twist Cap*). For the reasons set forth in *In re Page,* I doubt whether the existence of a security agreement in favor of a bank against the debtor should alter the analysis which leads to the conclusion that payment on a letter of credit does not violate the automatic stay. However, in the matter at bench, I need not reach that issue, for Provident has no right to seek reimbursement from the debtor; its claim is restricted to Edgemont, which might have an unsecured claim against the debtor. In these circumstances, even the *Twist Cap* rationale would be inapplicable.

Therefore, I conclude that Provident's honoring of its letter of credit would not violate the automatic stay.

### IV.

■ Next, the plaintiffs argue that even if the automatic stay is not applicable, the court should issue an injunction against payment of the letter of credit pursuant to 11 U.S.C. § 105. Such an injunction may be issued to stay actions not covered by the automatic stay in order to prevent significant harm to the estate. The test for determining the propriety of issuing the injunction is as follows: (1) there must be a danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize; (2) there must be a reasonable likelihood of a successful reorganization; (3) the relative harm between the debtor and the entity which would be restrained must be balanced; and (4) the public interest in successful bankruptcy reorganizations must be balanced against other competing societal interests. *In re Monroe Well Service, Inc.,* 67 B.R. at 750, 753 *accord, In re Diaconx Corp.,* 69 B.R. 343, 346 (Bankr.E. D.Pa.1987).

■ In this case, the request for a preliminary injunction must be denied as there has been no showing of a danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize if Dependable calls in the letter of credit. As explained in Part II, there are two potential consequences if the letter of credit is paid. First, Dependable may be obliged to pay the debtor that portion of the proceeds not used to satisfy claims on the bond. Second, Edgemont may have a claim against the debtor. The debtor has not established how either occurrence will lead to imminent, irreparable harm to the estate. Therefore, an injunction is not appropriate. *See In re Leisure Dynamics, Inc.*

### V.

Finally, the debtor and Edgemont assert that, under principles of state law, an injunction should be issued because there is no basis for Dependable to call in the letter of credit. They argue that the evidence

establishes that the debtor has fully performed its obligations on the underlying construction contract, has paid all of its suppliers in full and, therefore, there is no possibility that Dependable will have to make any payment on the bond it issued. They further argue that the only reason that Dependable called in the letter of credit was because the debtor filed a bankruptcy petition.

The applicable statutory provision in this case appears to be 13 Pa.C.S. § 5114. *See Banco Nacional De Desarrollo v. Mellon Bank, N.A.,* 726 F.2d 87, 90–91 (3d Cir. 1984). Section 5114(b) provides, in pertinent part:

NONCONFORMING DOCUMENT OR FRAUD—Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title section 7507 or of a security (section 8306) or is forged or fraudulent or there is fraud in the transaction:

\* \* \* \* \* \*

(2) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from ·the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.

The legal principles which govern the obligation of the issuer of a letter of credit to honor the demand of the beneficiary under 13 Pa.C.S. § 5114 were fully discussed by the Third Circuit of Appeals in *Roman Ceramics Corp. v. Peoples National Bank,* 714 F.2d 1207 (3d Cir.1983) (*"Roman Ceramics"*) which, in turn, analyzed the leading Pennsylvania Supreme Court case, *Intraworld Industries, Inc. v. Girard Trust Bank,* 461 Pa. 343, 336 A.2d 316 (1975) (*"Intraworld"*). The Third Circuit observed that the basic policy of letters of credit is to assure the prompt payment to the beneficiary by virtue of the independence of the letter of credit obligation from the underlying contract between the customer and· the beneficiary. The need for unfettered commercial transactions served by letters of credit competes against an important "statutory exception to the general rule of independent obligations when active fraud (as distinct from mere breach of warranty) is practiced by the beneficiary of the letter of credit." 714 F.2d at 1213–14. These competing policies have been resolved as follows:

> [B]efore the issuer of a letter of credit may be found to have been justified in refusing payment, it must be shown by clear, direct, precise and convincing evidence that the claim of the party attempting to draw on the letter of credit "has no basis in fact," and thus that this party "has no bona fide claim to payment" at all.

*Id.* at 1214, *quoting Intraworld,* 461 Pa. at 361, 336 A.2d at 325.

When the foregoing standard has been met, as well as the ordinary requirements for the issuance of an injunction, courts may enjoin the issuer from honoring the demand for payment. *See Foxboro Co. v. Arabian America Oil Co,* 805 F.2d 34 (1st Cir.1986) (reversing grant of preliminary injunction issued by district court because plaintiff had adequate remedy at law to recover damages in arbitration or judicial proceedings); *Itek Corp. v. First National Bank,* 730 F.2d 19 (1st Cir.1984); *Larson v. First Interstate Bank of Arizona, N.A.,* 603 F.Supp. 467 (D.Ariz.1983). *See generally* Rubenstein, *The Issuer's Rights and Obligations Under a Letter of Credit,* 17 U.C.C.L.J. 129, 167–71 (1984). In Pennsylvania, a preliminary injunction may be issued when: (1) the rights of the plaintiff are clear; (2) there is a threat of immediate and irreparable harm not compensable in damages and (3) greater injury would result by refusing it than by granting it. *E.g., Independent State Store Union v. Pennsylvania Liquor Control Board,* 495 Pa. 145, 432 A.2d 1375 (1981); *Berman v. City of Philadelphia,* 425 Pa. 13, 228 A.2d 189 (1967).

In this case, the plaintiffs desire that the court find conclusive the testimony which suggests that the debtor has fully per-

formed the construction contract and has obtained releases from its materialmen acknowledging that they had been fully paid. Through this evidence, the plaintiffs implictly argue that Dependable's demand for payment under the letter of credit cannot have had any bona fide basis. However, I cannot agree that the debtor and Edgemont have satisfied the standards set forth in *Roman Ceramics* and *Intraworld.*

The letter of credit provides that Dependable may call in the letter of credit upon a certification that it

> ha[s] incurred liability, *or* that a situation exists under which *in the sole judgment of [Dependable],* claim may be made for loss, cost or expense, and that monies represented by [the demand] are required *in the discretion of [Dependable] for its protection* and for the protection of its co-surety(ies) and reinsurer(s), if any, under said bond(s) or undertaking(s) or under agreement(s) of indemnity executed by [the debtor]. (emphasis added).

██ The evidence established that, before Dependable made its demand on the letter of credit, Hilti instituted a mechanic's lien action against the debtor in the courts in Delaware. At trial, the debtor went to great lengths to try to show that the mechanic's lien claim was filed in error because that supplier had been paid in full for any claims it may have with respect to the construction project which is subject to the

Dependable performance bond. However, this line of argument misses the mark. In light of the filing of that action, Dependable was within its rights, under the terms of the letter of credit, to conclude that a claim "may" be made under the bond. Moreover, the evidence at trial established that the debtor has not fully paid certain employee benefit obligations and taxes. The point is that the letter of credit itself gave Dependable great latitude in determining when it may call in the letter of credit. The burden of the debtor and Edgemont is even more difficult because, under 13 Pa.C.S. § 5114(b)(2), they are obliged to show by clear and convincing evidence that Dependable's exercise of the liberal discretion accorded under this letter of credit itself had no basis in fact. The record simply does not support such a finding.[7] As a result, the debtor and Edgemont have not made a sufficient showing of active fraud on Dependable's part, as required under *Roman Ceramics* and *Intraworld.*[8] At most, they have shown only the mere existence of a dispute as to the propriety of payment under the performance bond. *See United Technologies Corp. v. Citibank, N.A.,* 469 F.Supp. 473 (S.D.N.Y.1979) (preliminary injunction denied). It follows that the debtor and Edgemont have not established a clear right to their relief and are not entitled to a preliminary injunction against the honoring of De-

---

**7.** My conclusion is tempered somewhat by the fact that the record would indicate that Dependable was long aware of the Hilti lawsuit before it called in the letter of credit. However, this is counterbalanced by the lack of evidence that Dependable was on notice of the supplier releases prior to making its demand on the bank. In short, the record is not well developed regarding Dependable's state of mind. It was the moving parties' burden to establish the elements of its case by clear and convincing evidence and they have not done so.

**8.** The state of the record herein as well as the discretion accorded Dependable under its letter of credit distinguishes the case *sub judice* from *Roman Ceramics,* a case which bears some surface factual similarities. In *Roman Ceramics,* the letter of credit provided for payment to the beneficiary upon submission of an unpaid invoice and a certification that the invoice had not been paid. The beneficiary sued the issuer-

bank for refusing to honor a draft for payment. The Third Circuit affirmed the district court's findings that: (1) the beneficiary was aware, at the time it drew on the letter of credit, that the invoice submitted to the bank had actually been paid and (2) the knowing submission of the paid invoices was sufficiently fraudulent to meet the fraud exception of 13 Pa.C.S. § 5114(b)(2). Here, by comparison, the letter of credit was payable not upon a default in the agreement between the customer and the beneficiary, which is a relatively objective fact, but upon the existence of any situation under which, in Dependable's judgment, a claim "may be made" under the bond and that payment was needed for Dependable's protection. Unlike *Roman Ceramics,* the record does not support the conclusion that, in making its demand for payment, Dependable misrepresented any facts which may have been a condition precedent to its right to payment.

pendable's demand under the letter of credit.[9]

Finally, the debtor and Edgemont contend that the debtor's bankruptcy filing is the true cause of Dependable's decision to call in the letter of credit. I infer that they are arguing that such an action is fraudulent within the meaning of 13 Pa.C.S. § 5114(b)(2) as interpreted by *Roman Ceramics* and *Intraworld*.[10] They emphasize that Dependable called in the letter of credit well after all suppliers had been fully paid and well after the initiation of the mechanic's lien lawsuit in Delaware, but only shortly after the filing of the bankruptcy petition.

Perhaps if, by clear and convincing evidence, the plaintiffs had established that Dependable's decision was motivated solely by the bankruptcy filing and not by a good faith belief that a claim might be made on the performance bond, Dependable's conduct might be actionable. In response, Dependable argues that, even if the letter of credit was called in due to the bankruptcy, there was nothing improper or fraudulent in doing so. It reasons that the letter of credit was designed to be used by Dependable when the funds were needed in Dependable's sole judgment, for its own protection and that a bankruptcy filing, with its connotation of insolvency, provides a reasonable basis for Dependable's sense of insecurity.

I need not decide this interesting legal issue for the movants have not established that the bankruptcy filing was the sole cause of the demand on the letter of credit. While the timing of the demand may create an inference in favor of the finding the movants need, I am not convinced that they have shown the fact by "clear, direct, precise" evidence.

An order denying the request for a preliminary injunction will be entered.

---

**9.** Since the movants have not established their clear right to relief, I need not decide whether they have satisfied the other requirements for the issuance of a preliminary injunction.

### ORDER

AND NOW, this 19 day of June, 1987, upon consideration of plaintiffs' motion for preliminary injunction, the answer thereto and after notice and hearing, it is ORDERED and DECLARED that:

1. The request for payment by Dependable Insurance Co. under the letter of credit issued by Provident National Bank does not violate the automatic stay, 11 U.S.C. § 362(a).

2. Plaintiffs' motion for preliminary injunction is DENIED.

---

**10.** The debtor and Edgemont have not cited any provision of the Bankruptcy Code (other than the automatic stay, *see* Part III, *supra*), that would be violated if Dependable's decision to call in the letter of credit was solely due to the bankruptcy filing.