**In re**

**MACDONALD/ASSOCIATES, INC.,**
**Debtor.**

**MACDONALD/ASSOCIATES,**
**INC., Plaintiff,**

**v.**

**James STILLWAGON, Defendant.**

**Bankruptcy No. 8500422.**
**Adv. No. 850033.**

United States Bankruptcy Court,
D. Rhode Island.

Nov. 15, 1985.

---

**3.** In this case, the applicant was also the trustee and in that capacity will receive a statutory trustee's fee of $173.40.

Max Wistow, Wistow, Barylick & Bruzzi, Inc., Michael Silverstein, Hinckley, Allen, Tobin & Silverstein, Providence, R.I., for debtor.

Brian Spero, Tillinghast, Collins & Graham, Providence, R.I., for defendant.

## DECISION AND ORDER GRANTING PRELIMINARY INJUNCTION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the debtor's request for a preliminary injunction preventing James Stillwagon from proceeding with litigation against the debtor, MacDonald/Associates, Inc., or its principals, Sumner MacDonald and Marlies Richter, in the Court of Common Pleas for Franklin County in the State of Ohio. On July 2, 1985, after hearing on the debtor's motion for a temporary restraining order, we temporarily restrained Stillwagon from proceeding in the Ohio State Courts. Seven days later, a hearing was held on the debtor's complaint for preliminary injunction, with the matter then taken under advisement.

The relevant facts are as follows:[1] On February 27, 1985, Stillwagon entered into an "Exclusive Sales Agreement" with MacDonald/Associates, Inc. (the Company), Sumner MacDonald, and Marlies Richter, whereby Stillwagon acquired the right to market key holder devices to be produced by the Company. On March 15, 1985, the Company contracted with DCI Marketing, Inc. for the sale of said key holders to the Oldsmobile division of General Motors Cor-

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rules 7052 and 9014.

poration, which includes them in a promotional package accompanying the sale of its automobiles. In March 1985 DCI Marketing ordered about one million key devices from the Company at $4.60 per unit. On May 15, 1985, the Company, Sumner MacDonald, and Marlies Richter filed suit against Stillwagon in Providence County Superior Court, requesting a declaration that the February 27, 1985 contract is unenforceable. On June 5, 1985 Stillwagon removed the Superior Court action to the District Court for the District of Rhode Island, and promptly moved to dismiss or have the case transferred to Ohio, on grounds of improper jurisdiction and venue.[2]

On June 25, 1985, Stillwagon filed suit in the Court of Common Pleas for Franklin County, Ohio, against the Company, Sumner MacDonald, Marlies Richter, and DCI Marketing, Inc. On that same date he obtained a temporary restraining order requiring DCI to withhold from sums due the Company, $1.60 for each key device sold, which, according to Stillwagon, represents commissions due him under the contract. In accordance with the Ohio order, DCI Marketing was withholding $1.60 per unit from its payments to the debtor.

On July 2, 1985, the Company filed a Chapter 11 case in this Court, along with the instant adversary proceeding seeking to enjoin Stillwagon from prosecuting the Ohio litigation, and from enforcing the Ohio order requiring DCI Marketing to withhold funds from the Company. Under the terms of our July 2, 1985 temporary restraining order, the monies withheld by DCI Marketing are now being deposited into a joint escrow account, pending our decision on preliminary injunction.

Based upon the testimony, exhibits, and memoranda, we conclude for the following reasons that Stillwagon should be enjoined, until further order, from proceeding with the Ohio litigation, as against the Company, Sumner MacDonald, and Marlies Richter.

## DISCUSSION

It is fundamental that § 362(a) of the Bankruptcy Code operates as a stay of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;—

and that under § 362 the Ohio litigation is stayed automatically as against the debtor.

■■■ Section 362 does not apply automatically, however, to actions against a debtor's principals, partners, officers, employees, guarantors, or sureties. *See, e.g., Otoe County National Bank v. W & P Trucking, Inc.,* 754 F.2d 881 (10th Cir. 1985); *Pitts v. Unarco Industries, Inc.,* 698 F.2d 313 (7th Cir.1983); *Lynch v. Johns-Manville Sales Corp.,* 710 F.2d 1194 (6th Cir.1983). There is other authority in the Bankruptcy Court to enjoin actions not covered by the automatic stay, and this Court has previously exercised its discretion to enjoin the prosecution of suits brought in other courts "which may impair the debtor's plan and administration of the estate." *Polytop Corp. v. Globe Plastics, Inc. (In re Polytop Corp.),* 31 B.R. 226, 228 (Bankr.D.R.I.1983). *See also Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 21 B.R. 777 (Bankr.D.N.M. 1982); *In re Neisner Brothers, Inc.,* 4 B.C.D. 710, 711 (Bankr.S.D.N.Y.1978). The power to enjoin may apply also to actions against parties other than the debtor, where the failure to enjoin would adversely affect the debtor's estate or detrimentally influence or pressure the debtor. *Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.),* 26 B.R. 420 (Bankr.S.D.N.Y.1983), *aff'd,* 40 B.R. 219 (S.D.N.Y.1984). The power to en-

**2.** That motion was denied on September 9, 1985, C.A. No. 85–0336S, by Judge Selya, who

also referred that litigation to the Bankruptcy Court.

join third party litigation "assures that a creditor may not do indirectly that which he is forbidden to do directly." *Otero Mills, Inc., supra,* at 778.

Congress made specific reference to this authority in considering the application of and exceptions to the § 362 stay:

> Section 105 ... grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court as its adjunct have all the traditional injunctive powers of a court of equity, 28 U.S.C. §§ 151 and 164 as proposed in S. 2266, § 201, and 28 U.S.C. § 1334, as proposed in S. 2266, § 216. Stays or injunctions issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions.

S.Rep. No. 989, 95th Cong., 2d Sess. 51 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 342 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5837, 6298.

In order to obtain a preliminary injunction, the party seeking relief must establish that: (1) the plaintiff will suffer irreparable injury if the injunction is not granted; (2) the injury to the plaintiff outweighs any harm which granting injunctive relief would inflict on the defendant; (3) the plaintiff has shown a likelihood of success on the merits; and (4) an injunction will not adversely affect the public interest. *See Auburn News Co., Inc. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir. 1981); *Cournoyer v. Town of Lincoln (In re Cournoyer),* 43 B.R. 354, (Bankr.D.R.I. 1984), *aff'd,* 53 B.R. 478 (D.R.I.1985); *F.G.M. Associates, Inc. v. City of East Providence (In re F.G.M. Associates, Inc.),* 17 B.R. 765, 766 (Bankr.D.R.I.1982).

■ In support of his contention that as to Sumner MacDonald and Marlies Richter a stay is not appropriate, Stillwagon argues (unpersuasively) that although "there are common issues of law and fact between the claim of Stillwagon against the debtor and the claim of Stillwagon against the individuals," he should not be prevented on that ground from proceeding against the individuals. Stillwagon's Memorandum in Opposition to Debtor's Request for Preliminary Injunction at 17. This contention is totally unsupported, and we reject it. It is clear, and we find as a fact and conclude as a matter of law, that irreparable harm will result to the debtor if Stillwagon is allowed to proceed in Ohio against Sumner MacDonald and Marlies Richter. The individual defendants are the sole shareholders, officers, and executive employees of the debtor, and the debtor has always acted by and through these two individuals. The "Exclusive Sales Agreement" runs between Stillwagon, the Company, Sumner MacDonald, and Marlies Richter, the latter three entities being jointly and severally categorized in the document as the "Company." Throughout the contract, the rights and obligations of all three are referred to collectively and not separately. The complaint filed by Stillwagon in Ohio groups the Company and its principals under the heading "the Rhode Island defendants," and, without exception, seeks relief against all three as a group. The fact that the allegations against the debtor cannot be separated from those against the individuals is apparent from even a brief review of the Ohio complaint. Stillwagon's claims for relief against "the Rhode Island defendants" include, *inter alia:* (1) a declaration that the contract between Stillwagon, the Company, Sumner MacDonald, and Marlies Richter is valid; (2) a determination of the validity of the forum selection and choice of law provisions in the contract; (3) a finding that Stillwagon is entitled to commissions on sales to DCI Marketing; (4) a determination of the amount of the commission; (5) a finding that "the Rhode Island defendants" wrongfully repudiated the contract; (6) an order requiring DCI Marketing to withhold monies from *all* Rhode Island defendants; (7) an order against *all* Rhode Island defendants to repay certain monies to Stillwagon; and (8) the imposition of a constructive trust against the assets of *all* Rhode Island defendants.

The heart of the Ohio complaint is Stillwagon's claim to $1.6 million in commissions on sales of key devices to DCI Marketing, Inc. This claim must be viewed as a claim against the debtor, because the DCI Marketing purchase orders are with the debtor exclusively, and all payments are to be made to the debtor. By assignment dated December 13, 1984, Sumner MacDonald assigned all of his right, title and interest in the key device to the Company, and neither MacDonald nor Richter, as individuals, have any rights in the key devices.

As the debtor correctly points out, the instant situation is not unlike that in *In re Ms. Kipps, Inc.*, 34 B.R. 91 (Bankr.S.D.N. Y.1983), where a union sued the president of the debtor corporation for failure to make employee benefit contributions. The court observed in *In re Ms. Kipps, Inc.*:

> The Debtors and a non-debtor are jointly and severally liable *but there is but one wrong, one injury and one recovery …* The Union's action is inextricably intertwined with the claim against and liability of the debtor. (Emphasis added.)

34 B.R. at 93.

Stillwagon argues that his position is different from that of the plaintiffs in *Kipps* or in *In re Polytop, supra.* He suggests that those decisions were based on the likelihood that the debtor would be required to defend its employee under the doctrine of respondeat superior. He also argues that his claims against Sumner MacDonald and Marlies Richter run solely against them individually, for breach of contract, and not because of actions taken within the scope of their employment. Stillwagon's Memorandum in Opposition to Debtor's Request for Preliminary Injunction at 15–17. This argument, which is factually incorrect and conceptually erroneous, is rejected, without difficulty. Stillwagon's efforts to distinguish *Polytop* and *Kipps* ignore the fact that the debtor's rights and obligations under the contract with Stillwagon are virtually identical to those of each of the individual defendants. As such, the Ohio lawsuit presents a definite threat of harm to the debtor. To begin with, there is a clear risk that a judgment against MacDonald and Richter could result in the debtor being collaterally estopped in subsequent actions from relitigating issues previously resolved against its officers and executive employees. A number of courts have enjoined litigation against non-debtor sureties to avoid the risk of collateral estoppel and the resulting prejudice to the absent party (the debtor). *See Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123 (Bankr.D.Mass. 1984); *Plessey Precision Metals, Inc. v. Metal Center, Inc. (In re Metal Center, Inc.)*, 31 B.R. 458 (Bankr.D.Conn.1983); *Lahman Mfg. Co., Inc. v. First Nat'l. Bank of Aberdeen (In re Lahman Mfg. Co., Inc.)*, 9 C.B.C.2d 621 (Bankr.D.S.D. 1983). While, arguably, a surety's liability rests solely upon the debtor's actions, whereas employee liability may be separate from and unrelated to debtor activities, no such distinction exists here. The liability of the individual defendants is inseparable from that of the debtor, and the reasons for enjoining litigation against a non-debtor surety apply with equal force to restrain actions against MacDonald and Richter. *See In re Johns-Manville Corp.*, 26 B.R. at 426; *Mazur v. U.S. Air Duct Corp. (In re U.S. Air Duct Corp.)*, 8 B.R. 848 (Bankr.N. D.N.Y.1981) (suit against debtor's president stayed where liability of the individual and the debtor corporation arose from same transaction and was inseparable).

Since the contract with DCI Marketing is the debtor's most meaningful asset, it would be difficult to administer the estate here, while another court determines the rights of the debtor, its principals, and Stillwagon, with respect to that asset. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968); *see Acton Co., Inc. of Massachusetts v. Bachman Foods, Inc.*, 668 F.2d 76 (1st Cir.1982). The resolution of the rights and obligations of the parties under the DCI Marketing, Inc. contract are central to the success or failure of this Chapter 11 case. *See In re Equity Funding Corp. of America*, 396 F.Supp. 1266 (C.D.Cal.1975) (third party litigation

enjoined where outcome would "directly affect" debtor's assets and reorganization efforts).

The testimony was conclusive, that of the debtor's employees only MacDonald and Richter are capable of running the operation. Gordon Neale, recently hired by the debtor as a consultant, testified that MacDonald and Richter are the debtor's only executives, and the only people in management positions with any responsibility or authority. He described the next highest-ranking employee as having less responsibility than a shop foreman. Because of start-up problems facing the debtor in the early stage of production of the Oldsmobile key device, MacDonald and Richter are and will be required to devote substantial time and effort overseeing not only the day to day affairs of the business, but the bankruptcy proceedings as well. These key (pun intended) officers must be free at this stage to devote all their efforts to the operation of the business *and* the formulation of a plan. *See In re Arrow Huss, Inc.,* 51 B.R. 853, 859 (Bankr.D.Utah 1985), and for them to have to divert their energies from the reorganization effort in order to participate in the Ohio litigation would definitely hurt this reorganization. *See In re Johns-Manville,* 26 B.R. at 426.

As for the second factor to be considered in determining whether to order injunctive relief—will the harm to the debtor outweigh any harm which granting an injunction would inflict upon the defendant?—there is no evidence that the defendant will suffer harm if the Ohio litigation is stayed. Gordon Neale testified, on the other hand, that the company "will be underwater" if the $1.60 per unit claimed by Stillwagon continues to be withheld, and that it was impossible at that time to predict when a profit would be achieved. Production on the contract with DCI had just begun, and unless the debtor can meet its manufacturing schedule and expenses, all quarrels over anticipated profits will become academic. Without an injunction against Stillwagon, this debtor will probably be unable to reorganize.

Our ruling on this point is also influenced by the fact that Stillwagon's remedies do not rest within the exclusive jurisdiction of the Ohio State Court system. Numerous avenues are available under the Bankruptcy Code through which he can obtain, in this Court, a determination and adequate protection of any interest he may possess. *See In re Lahman Mfg. Co., Inc., supra.* There is little doubt in our minds that the harm to the debtor, if the Ohio litigation is allowed to proceed, far outweighs any possible harm to the defendant if the foreign proceeding is stayed.

■■■ The third area of the preliminary injunction analysis concerns the probability that the moving party will be successful on the merits. Courts differ considerably in the application of this factor. In the civil litigation context, the probability-of-success-on-the-merits test is relaxed somewhat, where irreparable injury is threatened and the balance of hardships tips in favor of the movant. *See Community Communications v. City of Boulder,* 660 F.2d 1370 (10th Cir.1981), *cert. dismissed,* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982); *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86 (9th Cir.1975). In the bankruptcy context, "probability of success" quite logically encompasses the probability of accomplishing a successful plan of reorganization. *See, e.g., In re Lahman Mfg. Co., Inc., supra; In re Otero Mills, Inc., supra.* In considering the probability of a successful reorganization, we note that the debtor has obtained the assistance of a consultant to oversee its finances, that early production on a substantial contract order is currently underway, and that the debtor's performance will be jeopardized if the Ohio litigation is not enjoined. At this juncture, the potential for a successful Chapter 11 Plan demands that the subject dispute be litigated in the Bankruptcy Court, where the interests of all the parties and creditors may be represented. *See In re Arrow Huss, Inc., supra,* at 858 (bankruptcy courts place emphasis upon the irreparable harm requirement that, absent a

stay, the debtor will be unable to develop or go forward with a plan); *Lesser v. A–Z Assoc. (In re Lion Capital Group)*, 44 B.R. 690 (Bankr.S.D.N.Y.1984); *Seybolt v. Bio-Energy of Lincoln, Inc., supra; In re Ms. Kipps, supra; In re Polytop Corp., supra; In re Heatron, Inc.*, 6 B.R. 493 (Bankr.W. D.Mo.1980).

The fourth factor, the effect of an injunction upon the public interest, has no application in this case.

Accordingly, and in light of all of the foregoing considerations, the defendant James Stillwagon is preliminarily enjoined from proceeding against the debtor, Sumner MacDonald, and Marlies Richter in any court other than this one. The funds being escrowed since the entry of the June 25, 1985 Ohio restraining order will continue to be so deposited, pending the result of a hearing on the merits. This ruling in no way purports to adjudicate Stillwagon's contractual rights as against either the debtor or its principals, but establishes this Court as the forum for litigation between these parties.

A scheduling conference will be held on December 5, 1985 at 4:00 p.m. to set discovery deadlines and a date for hearing on the merits of Stillwagon's complaint for breach of contract.

Enter Judgment accordingly.