**In re UNIVERSITY MEDICAL CENTER formerly known as Broad Street Hospital and Medical Center, Debtor.**

**UNIVERSITY MEDICAL CENTER formerly known as Broad Street Hospital and Medical Center, Raymond E. Silk, M.D., Nicholas A. Canuso, M.D., and Eugene Spitz, M.D., Plaintiffs,**

v.

**AMERICAN STERILIZER COMPANY, Phillip R. Remer, G.H. McBride, Robert J. Delacour, and Dominic T. Giacobella, Jr., t/a Remier, McBride and Company, City of Philadelphia, Cook Pacemaker Corporation, Ellen Ludmerer, a Minor, by Her Parents, Victor Ludmerer and Maryellen Ludmerer, Darryl Williams, Joyce Mangini, Ernestine Dixon, Guardian Life Insurance Company, and United States of America, Defendants.**

Bankruptcy No. 88–00003S.

Adv. No. 88–0051S.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 24, 1988.

Supplemental Opinion of April 11, 1988.

Ronnie Schwartz Albright, Kenneth E. Aaron, Lawrence J. Lichtenstein, Philadelphia, Pa., for plaintiffs.

William G. Frey, Philadelphia, Pa., for Creditors' Comm.

Matthew J. Siembieda, Philadelphia, Pa., for Remer, etc.

James J. O'Connell, Kevin Callahan, Office of U.S. Trustee, Philadelphia, Pa.

Gerald J. Williams, Rex F. Brien, Philadelphia, Pa., for Mangini.

Charles S. Strickler, Jr., Monica McGhie-Lee, N.L.R.B., Philadelphia, Pa.

Thomas R. Kline, Philadelphia, Pa., for defendants Victor and Maryellen Ludmerer.

Cynthia E. White, Philadelphia, Pa., for City of Philadelphia.

Stuart R. Silver, Philadelphia, Pa., for D. Williams.

Anne E. Pedersen, J. Craig Currie, Philadelphia, Pa., for Ernestine Dixon.

Bernard L. Kubert, Philadelphia, Pa., for Margaret Raye.

Edward Dennis, U.S. Atty. for E. Dist. of Pa., Philadelphia, Pa.

Robert E. Cherwony, Philadelphia, Pa.

Edward Meese, U.S. Atty. Gen., Dept. of Justice, Washington, D.C.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Before us is a Motion for a Preliminary Injunction by the Plaintiff–Debtor, a partnership operating the Broad Street Hospital and Medical Center in Philadelphia, and its three general partner-physicians, Dr. Raymond D. Silk, Nicholas A. Canuso, and Eugene Spitz, seeking to enjoin all parties who have sued the Debtor and/or the general partners individually from proceeding against any of these non-debtor partners. We believe that the theory espoused by the

Plaintiffs, i.e., that § 105(a) of the Bankruptcy Code can be utilized to broaden the scope of the stay beyond that to which it automatically extends by the terms of 11 U.S.C. § 362(a), is viable in certain circumstances. We admire the Plaintiffs' appreciation for the proper procedures which must be followed and general elements which must be proven to succeed under such a theory, and we admire their ambition in "thinking big" in applying that theory in the instant proceeding.

However, we believe that this theory must be employed sparingly. Super-imposing the demanding criteria required to be established to obtain a preliminary injunction upon the demanding burdens to be met to succeed upon any such § 105(a) motion proves to be far more than the Plaintiffs can carry on this record. Therefore, we are constrained to deny the relief sought.

The underlying Chapter 11 case was filed on January 4, 1988. On the date of filing, the Debtor filed a motion for authority to use cash collateral. A hearing to consider the entry of an interim Order on January 6, 1988, attracted a large crowd of counsel representing various interested parties. A Creditors' Committee which promises to be active was quickly formed and authorized to hire eminent counsel on January 27, 1988. However, ultimately there was no opposition to the entry of an interim cash collateral order effective through February 4, 1988, or a subsequent interim Order effective through March 4, 1988. Hence, although there was definite creditor interest in the spectacle of this bankrupt hospital, we cannot say that this interest has taken the form of hardened opposition to every or even most moves taken by the Debtor to date.

The instant adversary proceeding was filed on January 29, 1988. The instant Preliminary Injunction motion was filed simultaneously with the Complaint. We granted the Plaintiffs' request for expedited consideration and scheduled the motion for a hearing on February 9, 1988, indicating that "a written answer by the Defendants on or before Feb. 8, 1988, would be appreciated."

The Complaint named ten entities [1] who were presently litigating causes of action against the Debtor and/or one or more of the individual Plaintiffs as defendants in court or administrative proceedings in a variety of forums. These included four malpractice claimants,[2] three trade creditors (including the accountants), an insurance company, the City of Philadelphia (hereinafter referred to as "the City"), and the United States of America (hereinafter referred to as "USA").

We must express our appreciation as well as surprise at the quality and vigor of the responses. The four malpractice plaintiffs and the accountants not only filed answers, but also independently prepared Memoranda of Law countering that submitted by the Plaintiffs with their Preliminary Injunction Motion. The USA was joined as a party because the Plaintiffs were seeking to enjoin two rather modest National Labor Relations Board (hereinafter referred to as "NLRB") matters from proceeding, and it filed an Answer and a lengthy Memorandum. The City and the United States Trustee also appeared.

At the outset of the proceedings on February 9, 1988, the Plaintiffs' counsel indicated that they had voluntarily withdrawn their efforts to enjoin the NLRB proceedings, eliminating the USA as a party defendant. Counsel for the City indicated that its state court action had been prompted by the Debtor's failure to file certain business tax returns which had subsequently been filed, mooting both the state court action and the case against it here. Remaining at trial were still a large number of counsel, including the United States Trustee, who participated in opposing the motion. The Plaintiffs only ally was relatively quiet counsel representing the Creditors' Committee.

Testifying at the hearing were Dr. Canuso and Dr. Silk. Dr. Spitz was apparently too busy seeing patients in his private office in neighboring Morton, Pennsylvania, to attend.

Dr. Canuso testified that he is the Chief Operating Officer of the hospital and that these duties consume his time to the point

---

**1.** We count an accounting firm all of whose four individual principals were named as defendants as one entity.

**2.** A fifth malpractice claimant, Margaret Raye, was apparently omitted from inclusion in the Complaint in error. However, the Plaintiffs moved to join Ms. Raye as a party just prior to

the hearing, and her counsel was permitted to participate at the hearing. In our final Order, we direct the Plaintiffs to file an Amended Complaint including allegations against this party by March 1, 1988, if they choose to do so in light of this Opinion.

where he has only a limited practice of medicine. However, the hospital, employing a full-time staff of about two hundred (200) persons, also employed an Administrator, who it appears performs most of the "nuts and bolts" of administration. Dr. Canuso spoke of his duties largely in generalities and did not impress us with establishing that he was overburdened, nor did he point to any new, particularly time-consuming duties which arose as a result of the Chapter 11 filing. Perhaps because of his limited practice, he was a defendant in only one of the malpractice actions and indicated little or no knowledge of the status of any of the proceedings sought to be enjoined. For example, he was completely unaware of a recent order in the accountants' state court action dismissing the counterclaims of the Plaintiffs in that case because of the repeated failure of counsel for the Plaintiffs in that case (not their bankruptcy counsel) to respond to discovery requests.

Dr. Silk testified that he served as President of the medical staff. An individual defendant in all but one of the malpractice actions, he readily conceded that his own malpractice insurance and proceeds from the Pennsylvania Catastrophic Loss ("CAT") Fund were likely to cover all liabilities against him. He did not believe that any of the malpractice actions would demand more than "a couple hours" of his time.

Both doctors were extremely vague on their projected personal financial commitments to the Debtor's rehabilitation. Their goal in these proceedings, which they reiterated throughout the hearing, was to establish the Debtor as an independent financial entity and not to put in any of their personal funds. Only on repeated questioning did Dr. Silk reluctantly state that he had liquid assets of "$150,000.00 or so" which he might contribute to the Debtor. However, we got the distinct impression that any requirement of private contributions from any of the partners to the rehabilitation process would represent a worst-case scenario which they did not relish or anticipate to transpire.

At the close of the hearing, we denied the Plaintiffs' request for immediate entry of an Order granting any relief to them for even a limited duration. Rather, we reserved decision until all interested parties had an opportunity to submit a Brief or Supplemental Brief on or before February 16, 1988. We note that the United States Trustee joined all of the parties defendant in filing Supplemental Memoranda opposing the entry of any relief in favor of the Plaintiffs. On February 18, 1988, we received a letter from counsel for the Creditors' Committee, reportedly based upon discussion of the matter at a Committee meeting of February 17, 1988. Therein, counsel indicated that the Committee believed that claims covered by insurance *should* be allowed to proceed to the extent of coverage, and that it would be "disposed" to support the motion to any extent only if the partner-physicians "were willing to disclose their individual assets and agree not to dispose of such assets other than in the ordinary course." However, rebuffed in these apparently reasonable requests, the Committee now took no position on the motion.

Since only a motion is before us, we are preparing this Opinion in the hopefully-readable narrative form. *See In re Campfire Shop, Inc.,* 71 B.R. 521, 524–25 (Bankr. E.D.Pa.1987).

■ Since the plaintiffs are requesting that we enter a preliminary injunction, they are obliged to establish each element of the four-prong test enunciated as follows in *Delaware River Port Authority v. Transamerican Trailer Transp., Inc.,* 501 F.2d 917, 919, 920 (3d Cir.1974):

(1) a reasonable probability of eventual success in the litigation, and (2) that [they] will be irreparably injured *pendente lite* if relief is not granted to prevent a change in the status quo....

(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and

(4) the public interest.

*See also, e.g., Marxe v. Jackson,* 833 F.2d 1121, 1125–29 (3d Cir.1987); *SI Handling Systems, Inc. v. Heisley,* 753 F.2d 1244, 1254–56 (3d Cir.1985); and *In re Morales,* 45 B.R. 314, 316 (Bankr.E.D.Pa.1985), *aff'd,* C.A. No. 85–1159 (E.D.Pa. April 25, 1985).

The law in reference to the use of § 105(a) to extend bankruptcy stays to non-debtors has been articulated carefully and exhaustively by Judge Fox in *In re Monroe Well Service, Inc.,* 67 B.R. 746, 750–57 (Bankr.E.D.Pa.1986). *See also, e.g., In re Gathering Restaurant, Inc.,* 79 B.R. 992, 999–1000 (Bankr.N.D.Ind.1986) (collects cases); *In re Guy C. Long, Inc.,* 74 B.R. 939, 944 (Bankr.E.D.Pa.1987); and *In re Diaconx Corp.,* 69 B.R. 343, 346–47 (Bankr.E.D.Pa.1987).

In *Monroe Well,* "very reluctantly exercising [§ 105(a)] powers," 67 B.R. at 747,

Judge Fox granted an injunction of limited duration (30 days) to prevent lien creditors of purchasers of oil-well servicing from the Debtor from enforcing their liens against the purchasers, thus preserving the Debtor's sole source of income derived from its oil-well servicing duties. In the course of so doing, Judge Fox allowed that § 105(a) could be a basis for extending relief to non-debtors if and only if the moving parties satisfied the following four requirements:

> The first requirement is that there be the danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize. Second, there must be a reasonable likelihood of a successful reorganization. Third, the court must balance the relative harm as between the debtor and the creditor who would be restrained. Fourth, the court must consider the public interest; this requires a balancing of the public interest in successful bankruptcy reorganizations with other competing societal interests. 67 B.R. at 752–53.

Procedurally and technically, it is difficult to find fault with the position and conduct of the Plaintiffs' counsel. They filed an "appropriate adversarial proceeding under § 105 and § 362 to achieve the desired result." *In re All Seasons Resorts, Inc.*, 79 B.R. 901, 903 (Bankr.C.D. Cal.1987). They articulated and accepted the *Monroe Well* criteria. They asked their witnesses the right questions at the trial, focusing upon their time and financial commitments to reorganization which might be adversely impacted by the bankruptcy. Perhaps they erred in sweeping too broadly in their relief sought, but broad requests can be narrowed more easily than narrow requests can be broadened. Their difficulty was that their witnesses provided answers to their questions which simply failed to satisfy the demanding criteria imposed upon them.

Our starting point for analysis is the basic principle articulated in a brief recent Opinion of Judge Bechtle of our district court in *Personal Designs, Inc. v. Guymar, Inc.*, 80 B.R. 29, 30 (E.D.Pa.1987): "Actions against co-defendants, guarantors, or principles of the debtor generally are not barred by the § 362(a) stay." This truism requires the Plaintiffs to fall back upon § 105(a) as the substantive basis for the relief sought. As we recently indicated in *In re Latimer; Sinkow v. Latimer*, 82 B.R. 354, 364, § 105(a) "is not to be employed as a loose cannon ... to support otherwise unsupportable claims." Thus, as we indicated, in the only instance in which, to our memory, we have ever granted relief under that section, in *In re Metro Transportation, Inc.*, 64 B.R. 968, 974 (Bankr.E. D.Pa.1986), invocation of § 105(a) must be reserved for a truly "extraordinary set of circumstances." We note that, in *Diaconx* and *Long, supra*, Judge Fox declined invitations to invoke § 105(a) in situations not nearly so crucial as those present in *Monroe Well*.

Juxtaposing the criteria for issuance of any preliminary injunction with those set forth in *Monroe Well* for invocation of § 105(a) reveals that these criteria are in most respects identical. The only element added in the *Monroe Well* test is a requirement of "reasonable likelihood of a successful reorganization." The preliminary injunction criteria also requires a "reasonable probability of eventual success in the litigation." This latter requirement has the effect of imposing a heightened burden upon the Plaintiffs to establish the remaining elements, i.e., irreparable harm, lack of comparable harm to opposing parties, and a serving of the public interest. *Cf. In re Industrial Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr.E.D.Pa.1987) (showing of criteria for any sale of assets heightened when sale is preconfirmation). However, it is certainly not impossible to obtain preliminary relief under § 105(a) to enjoin proceedings against non-debtors. *See, e.g., Gathering Restaurant, supra*, 79 B.R. 1003–04; and *In re MacDonald/Associates, Inc.*, 54 B.R. 865, 874 (Bankr.D.R.I.1985). It is just very difficult to do so.

The Plaintiffs argue that the individual partners' efforts, time, and assets are essential to reorganization of the Debtor and hence that the relief sought is warranted. They contend that the administrative activities of all of the partners have been intensified by the bankruptcy filing. They point out that the pendency of the state-court litigation will cause the busy calendars of these professionals to overflow. They point out that insurance coverage is not so unlimited as "to satisfy the total amount of all possible judgments." Supplemental Memorandum of Law in Support of Preliminary Injunction, at 6. They contend that any judgment against all of the partners individually in the accountants' suit will also create a lien against the Debtor's partnership assets.

However, the potential of the malpractice plaintiffs to look to insurance coverage as a

primary source of recovery blunts the Plaintiffs' arguments as to such parties. As we pointed out in our recent Memorandum Opinion in *In re Metro Transportation Co.*, 82 B.R. 351, 353–54, (Bankr.E.D. Pa.1988), expressly agreeing to limit claims to insurance coverage may result in a lifting of even the *automatic* stay against the *Debtor.* Certainly, the "possibility" that the malpractice plaintiffs would seek to recover from the partners' personal assets is hardly a showing of such irreparable harm as to overcome the obvious adverse consequences to these parties in extending the stay to the non-debtors. If the prospect of financial detriment to the non-debtor Plaintiffs and consequently to the Debtor develops into more than a possibility, then and only then would the relief sought appear to be justified on this basis.

The potential of the accountants' recovery against partnership assets is clearly barred by operation of the stay. Given this court's respect for the power of the stay as against such unsecured claims, it is doubtful that the accountants will reach partnership assets. *See, e.g., Metro Transportation, supra,* at 353–54; *In re Ziets,* 79 B.R. 222, 224, 226 (Bankr.E.D.Pa.1987); *In re Ronald Perlstein Enterprises, Inc.,* 70 B.R. 1005, 1009–10 (Bankr.E.D.Pa.1987), *appeal dismissed,* C.A. No. 87–2364 (E.D.Pa. June 25, 1987); and *In re Stranahan Gear Co.,* 67 B.R. 834, 836–38 (Bankr. E.D.Pa.1986). We are quite willing to enforce the power of the stay where it applies, *In re Clark,* 69 B.R. 885, 889–92 (Bankr.E.D.Pa.1987), *modified on other grounds,* 71 B.R. 747 (Bankr.E.D.Pa.1987), just as we are reluctant to extend its power beyond its normal reach.

█ We agree with the Plaintiffs' arguments that extensive demands of time or financial resources flowing from litigation to which they are parties *could* justify the relief sought. *See, e.g., Gathering Restaurant, supra; In re Kasual Kreation, Inc.,* 54 B.R. 915 (Bankr.S.D.Fla.1985); *MacDonald/Associates, supra;* and *In re Provincetown Boston Airline, Inc.,* 52 B.R. 620 (Bankr.M.D.Fla.1985). However, the determination of whether the non-debtors' commitment of time or financial resources is sufficient to merit the relief sought is fact-determinative, and the burdens upon the non-debtors to meet the necessary criteria very demanding. All bankruptcy proceedings make certain time demands upon debtors' officers. There is no evidence, at this juncture, what or that any difficult issues will emerge in the course of

these bankruptcy proceedings. Financial commitments from officers are almost always a welcomed "possibility" in a Chapter 11 case. However, the degree of the showing that such commitments will be likely to be required and to be made must clearly be substantial to justify § 105(a) relief.

The testimony of Drs. Canuso and Silk on these points, not to mention the revelation of the priorities of Dr. Spitz by his absence, were not impressive. They repeatedly conceded that the lawsuits against them individually were unlikely to require much expenditure of their time. As the letter from counsel for the Creditors' Committee indicating the doctors' continuing reluctance to make financial commitments or even disclosures underscores, their commitment on this score has been far from spectacular. We would rate the showing of the necessary elements of projected expenditure of time and money by the doctors as low, and not nearly sufficient to support the extraordinary relief sought. Certainly, the circumstances here are a far cry from the truly exigent circumstances which prompted Judge Fox's action in *Monroe Well.*

The broad scope of the relief sought by the Plaintiffs is also troubling. Where relief under § 105(a) has been granted, it has typically been limited in time and proceedings impacted thereby. *See, e.g., Gathering Restaurant, supra,* 79 B.R. at 1003–04 (scope limited to one case for 60 days; numerous conditions imposed); *Monroe Well, supra,* 67 B.R. at 757 (duration limited to 30 days); *Kasual Kreation, supra,* 54 B.R. at 917 (only one case enjoined); *MacDonald/Associates, supra,* 54 B.R. at 871 (relief granted to only one officer in one lawsuit); *Provincetown, supra,* 52 B.R. at 626 (same). Here, the Plaintiffs ask us to provide sweeping relief as to all lawsuits against each of the partners indefinitely. We are unaware of any precedent for such indiscriminate application of § 105(a). Thus, we are compelled to deny the Plaintiffs' motion.

Before closing, we must observe that the docket does not, as is normally the case in all adversary proceedings, recite either a date by which a responsive pleading must be filed to the Complaint, or a date for a final hearing. Perhaps this is because the expedited nature of this motion paralyzed the Clerk's office in performing this administrative function. Noting that several of the Defendants responded very quickly to the instant Motion, we feel comfortable with establishing March 24, 1988, as the

date by which answers must be filed. We also note that several trade creditors have not opposed the relief sought to date, and the Plaintiffs ought to be able to pursue relief by default against them. Finally, we shall allow the Plaintiffs until March 1, 1988, to join the mistakenly omitted Defendant, Margaret Raye, in an Amended Complaint, if they choose to do so.

Since the evidence presented at the hearing on February 9, 1988, becomes part of the record at trial, see Bankruptcy Rule 7065 and Federal Rule of Civil Procedure 65(a), the trial may be brief, and we are therefore scheduling same now shortly after the answer period expires on March 29, 1988.

An Order setting forth these deadlines and denying the Plaintiffs' Motion shall be entered simultaneously with the filing of this Opinion.

## SUPPLEMENTAL OPINION

On February 24, 1988, we filed an Opinion in which we thoroughly set forth our reasons for denying a motion filed by the Debtor–Plaintiff, a partnership operating a small hospital which has unfortunately been forced to recently close its doors after initially attempting to reorganize and remain open, and its three general partner-physicians, seeking to preliminarily enjoin parties from pursuing litigation not only against the Debtor but also against the general partners individually on the ground that the automatic stay should be extended to them pursuant to 11 U.S.C. § 362 or 11 U.S.C. § 105(a). In our Order, in addition to denying any relief on the motion, we set March 29, 1988, as the date for the final hearing on the Complaint.

On the date of the hearing, the Plaintiffs' counsel advised that matters had been resolved with all but three of the parties who had sued the Plaintiffs pre-petition, AMERICAN STERILIZER COMPANY (hereinafter referred to as "American"); REMER, McBRIDE AND COMPANY, the Debtor's former accountants and the partners who composed the firm (hereinafter referred to as "Remer"); and GUARDIAN LIFE INSURANCE COMPANY (hereinafter referred to as "Guardian"). The suits brought by all of the other Defendants herein except the malpractice claimants were apparently moot. Stipulations were negotiated with the malpractice claimants to allow them relief from the stay, even as to the Debtor, as long as recovery was limited to insurance proceeds.

American and Remer answered the Complaint and appeared at the trial. Guardian neither answered not appeared, and hence is the target of an Application for a default judgment, which we shall grant.

The Plaintiffs did not make a request to add to the testimonial record which they presented at the preliminary injunction hearing on February 9, 1988. Rather, they stated that they would rest on that record supplemented by copies of the pleadings in the pre-petition actions filed against them by American and Remer, and that they wished to file a Brief addressing an issue that they believed had not been given sufficient attention in our previous disposition. We entered an Order of March 30, 1988, allowing the Plaintiffs until April 1, 1988, to so supplement the record and permitting any parties to file any supplemental Briefs on or before April 5, 1988.

In their supplemental Brief, the Plaintiffs appear to concede that the record does not support any award of extraordinary relief beyond the normal scope of §§ 362 or 105(a). However, they point out that a judgment against the partners individually on a partnership obligation would create a lien against the partnership itself as a matter of law. *See Berger Realty Group, Inc. v. Bradly Realty Corp.*, —— B.R. ——, C.A. No. 84–4291 (E.D.Pa. August 7, 1987); *Palkovitz v. Second Federal Savings & Loan Ass'n*, 412 Pa. 547, 549–50, 195 A.2d 347, 349 (1963); and *Charmwood, Inc. Appeal (Reed B. Coyle Co. v. DeLullo)*, 200 Pa.Super. 140, 146–47, 187 A.2d 296, 299 (1962). Therefore, they contend that any judgment obtained against the individual partners in the outstanding legal actions will perforce be enforceable against the partnership and that this would violate the automatic stay in the ordinary course of affairs, entitling them to relief without establishing the presence of any extraordinary circumstances.

We already rejected this argument in our previous Opinion, *supra* at 758–59. There, we pointed out that we would vigorously enforce the stay if the parties suing the partners made any effort to advance against assets of the partnership-Debtor. Therefore, while a judgment against the partners might ordinarily give rise to a right to execute against partnership assets, the stay would intervene to blunt any such efforts.

In our previous discussion, we assumed the validity of the principle established by *Berger, Palkovitz*, and *Charmwood, su-*

**760**

*pra.* However, this principle is limited in its effect as to a debtor by the presence of the automatic stay. We fail to see why this principle should be a vehicle for the partners to extend the scope of the stay to them, in their respective individual capacities, and prevent any judgment against them from being a lien or a basis for execution against their respective individual assets. We believe that the scope of the stay should be extended to protect partners individually only when the requirements for extending relief to non-debtors, as articulated by Judge Fox of this court in *In re Monroe Well Service, Inc.*, 67 B.R. 746, 752–53 (Bankr.E.D.Pa.1986), and in our previous Opinion, *supra* at 757, are met.

American cited to us a case directly on point on this issue, *In re The Bank Center, Ltd.*, 15 B.R. 64 (Bankr.W.D.Pa.1981). In that case, Chief Judge Cosetti of the Bankruptcy Court for the Western District of Pennsylvania concluded that "the Automatic Stay provisions of Section 362 do not apply to the actions against partners of the Debtor." *Id.* at 65. The Plaintiffs here suggest that *Bank Center* is distinguishable because the creditor there had already obtained a judgment against the partnership prior to the bankruptcy filing, and that its impact is diminished because the debtor there failed to file a brief emphasizing the principle established in *Berger, Palkovitz* and *Charmwood* to that court.

We do not agree that the fact that a judgment was entered pre-petition against the partnership in *Bank Center*, but not here, is a distinguishing factor. If anything, that factor made that case *more* compelling from the standpoint of the interests of the individual partners than the facts here, as the prospect of execution against the partners, and the detriment which this might effect upon the partnership, was closer at hand. Moreover, we do not feel that Judge Cosetti necessarily overlooked the impact of the principle set forth in *Berger, Palkovitz* and *Charmwood*. What is more likely is that he concluded, as do we, that the principle for which they stand does not detract from the force of the automatic stay in protecting the assets of the Debtor-partnership, and hence that this principle is of no relevance to the issues before us.

We therefore conclude that the Plaintiffs are entitled to judgment against Guardian only, by default, and not against the contesting Defendants, Remer or American. Accordingly, an Order so providing will be entered.